United States Court of Appeals,

Eleventh Circuit.

No. 95-2898.

Diann WALKER, Charles Stewart, Dorothy Roberts, Barbara King, Pearlie Williams, Louvenia Jones, Rosa Henderson, Delores Colston, Plaintiffs-Appellants,

v.

Sandra MORTHAM, Secretary of State, Defendant-Appellee.

Oct. 28, 1998.

Appeal from the United States District Court for the Northern District of Florida. (No. TCA 79-895-11), Maurice Mithcell Paul, Judge.

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

TJOFLAT, Circuit Judge:

Black employees and applicants for employment with the State of Florida brought suit against the State and its Secretary of State under 42 U.S.C. §§ 2000e *et seq.* (Title VII),[1] claiming that the State had engaged in a pattern and practice of unlawful racial discrimination in its employment decisions. The case was certified as a class action, but then decertified for inadequacy of representation. After a non-jury trial on the merits of the individual plaintiffs' claims, the district court entered final judgment in favor of the defendants on all counts, assuming that every plaintiff had proven a prima facie case of discrimination, but finding that none of the plaintiffs had carried

[1]The plaintiffs' original complaint was brought under 42 U.S.C. § 1981 (1994), and 42 U.S.C. § 1983 (1994). The district court promptly dismissed all claims against the State of Florida brought under those two statutes, but denied the Secretary of State's motion to dismiss him as well. In their first amended complaint, the plaintiffs added claims under Title VII that paralleled their claims under § 1981 and § 1983, and named the State of Florida as a Title VII defendant. The parties then ceased to distinguish among the three statutes. After examining the record, we conclude that only Title VII claims remain in this case. The district court on remand should proceed only under that statute.

the ultimate burden of proving discrimination in light of the defendants' asserted nondiscriminatory reasons for the challenged employment decisions. Plaintiffs then appealed to this court. We reversed and remanded, holding that the defendants had not articulated a legitimate, nondiscriminatory reason for any of their challenged employment decisions, and therefore directing the district court to determine for each claim whether the plaintiff had established a prima facie case of discrimination. *See Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone,* 893 F.2d 1189 (11th Cir.1990) ("*IMPACT*"). On remand, the district court held that none of the plaintiffs had established a prima facie case with respect to any claim, and again entered judgment in favor of the defendants on all counts.

Plaintiffs now appeal the district court's judgment on remand, claiming that the district court failed to comply with this court's mandate and with the law of the case. Because we conclude that the district court applied incorrect legal standards in deciding whether the plaintiffs had established prima facie cases, we undertake the task ourselves.[2] We vacate the court's judgment in part and affirm in part, remanding the case to the district court with directions.

I.

---

[2]In determining whether a plaintiff established a prima facie case with respect to a given claim, the district court's task was to examine the evidence the plaintiff adduced at trial and determine whether the plaintiff had presented credible evidence in support of the four elements of a prima facie case established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973): 1) she is a member of a protected class under Title VII; 2) she was qualified for the employment position in question; 3) she applied for the employment position in question and was rejected; and 4) the employment position remained open or was filled by a person outside the protected class to which the plaintiff belongs. *See id.,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also* part II.A, *infra.* Inasmuch as this task only required the district court to examine a cold record for the existence of evidence in support of the elements, we are equally suited to undertake the same task on appeal. We must still remand, however, so that the district court, as trier of fact, can determine whether the evidence supporting the prima facie case is credible.

2

This case was brought in 1979 as a class action in the District Court for the Northern District of Florida. The named plaintiffs—a non-profit organization ("IMPACT"),[3] black employees of Florida's Department of State (the "Department"), and black former applicants for employment with the Department—brought suit on behalf of "all past, present, and potential black employees" against the State and the then-Secretary of State, George Firestone,[4] alleging racial discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII.[5] The plaintiffs claimed that the State had engaged in a pattern and practice of employment discrimination, carried out by a cadre of white supervisors who conducted discriminatory subjective evaluations. The plaintiffs sought equitable relief, including reinstatement, hiring, back pay, front pay, seniority compensation, and fees and costs.

On November 7, 1980, the district court entered an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying a class in the case consisting of "all past, present and future black persons employed by the Florida Department of State and all past, present and future black applicants for employment with the Florida Department of State." The case then proceeded as a certified class action. Following protracted discovery disputes, the plaintiffs filed an "emergency

---

[3]The full name of the organization was Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc.; its membership consisted only of individual plaintiffs in this case. On January 21, 1986, the district court dismissed IMPACT from the case for lack of standing. The plaintiffs appealed that dismissal in *IMPACT,* 893 F.2d 1189, and we implicitly affirmed the district court's decision. *See IMPACT,* 893 F.2d at 1192 (listing other issues on appeal and stating that "[t]hese are the only claims we think merit attention on appeal").

[4]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, George Firestone's successor, Jim Smith, was substituted as a party defendant for Firestone when Firestone left office. When Smith finished his term as Secretary of State, his successor Sandra Mortham (the current Secretary) was substituted for Smith.

[5]*See* note 1, *supra.*

motion" to suspend the pre-trial schedule. In that motion, the plaintiffs stated that, because the defendants had repeatedly refused to comply with the plaintiffs' discovery requests, plaintiffs' counsel would be "financially and physically unable to adequately represent the interests of the certified class" if the court did not grant plaintiffs immediate relief from the defendants' recalcitrance. Based on the quoted representation by the plaintiffs, the district court held a hearing regarding the continued ability of the named plaintiffs and of plaintiffs' counsel adequately to represent the class under Rule 23(a)(4). Following the hearing, the court decertified the class based on financial inability.

The case then proceeded toward trial on the individual plaintiffs' claims. The court entered numerous pretrial orders, including an order stating that "defendants need not include [in their discoverable evidence] any information concerning employment tests; such tests are not an issue in this case."

Non-jury trial commenced April 1, 1986. At trial, the court heard the claims of eleven individual plaintiffs,[6] each alleging racial discrimination in hiring or promotion and proceeding on

---

[6]These eleven were Diann Walker, Charles Stewart, Dorothy Roberts, Barbara King, Pearl Williams, Louvenia Jones, Rosa Henderson, Delores Colston, Linda Isaac, Jacquelyn Ross, and Gracie Holton. Isaac and Ross were not originally named as plaintiffs in the suit; they moved to intervene under Rule 24(b) of the Federal Rules of Civil Procedure on December 17, 1984. The court granted their motion on June 7, 1985.

Two additional plaintiffs, Clifford Simmons and Marguerite Stewart, were included in all pretrial motions but did not testify at trial. Towards the end of the plaintiffs' case in chief, Stewart and the defendants settled, and the parties stipulated to a voluntary dismissal of all her claims. At the close of the plaintiffs' case in chief, the plaintiffs renewed their pre-trial motion to sever Simmons' claims from the rest of the suit, which the court granted. After trial, the parties stipulated to a dismissal, and the district court dismissed Simmons' claims with prejudice on September 17, 1986. Neither Simmons nor Stewart joins this appeal.

4

both disparate treatment and disparate impact theories. At the close of the plaintiffs' case in chief, the court, in response to oral motions by defendants' counsel, 1) dismissed all disparate impact claims, 2) dismissed all claims brought by plaintiff Gracie Holton, and 3) dismissed plaintiff Charles Stewart's claim based on the Department's failure to hire him to the position of Regional Representative.[7]

On August 11, 1986, the district court entered an order detailing its findings of fact and conclusions of law regarding the evidence presented at trial. The court assumed that each plaintiff had established a prima facie case of discrimination, but found that the defendants had produced evidence of legitimate, nondiscriminatory reasons for the employment decisions challenged by the plaintiffs, and that the plaintiffs had failed to show they had been discriminated against despite that evidence. It therefore entered judgment for the defendants on all counts on October 3, 1986.

The plaintiffs appealed to this court, claiming, *inter alia,* that the court had erred by 1) eliminating testing evidence from the scope of discovery; 2) dismissing plaintiff Gracie Holton's claims; 3) decertifying the class and denying the plaintiffs' motion to recertify; and (most importantly for the purposes of the present appeal) 4) determining that defendants had carried their burden of production under *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101

---

[7]Before trial, the court had held that certain positions within the Department were exempt from coverage under Title VII. At the close of the plaintiffs' case in chief, the court found that Regional Representative was one of those exempt positions, and therefore held that Stewart could not bring a claim under Title VII for failure to hire to a Regional Representative position. Stewart moved for reconsideration of the court's decision during the defendants' case in chief, and the court reaffirmed its dismissal. Thus, although the district court's dispositive order of August 11, 1986, purports to pass judgment on Stewart's Regional Representative claim, that claim was no longer properly before the court. Stewart does not appeal the court's earlier order dismissing the Regional Representative claim; we therefore do not address that claim in this opinion.

S.Ct. 1089, 67 L.Ed.2d 207 (1981). With regard to the last issue, the plaintiffs argued that the defendants themselves had articulated no legitimate, nondiscriminatory reasons for their employment decisions, and that the court had impermissibly substituted its own reasons as support for its judgment against the plaintiffs. We issued an opinion addressing the plaintiffs' claims on February 6, 1990. *See IMPACT,* 893 F.2d at 1189.

In *IMPACT,* we held, in relevant part, that the defendants indeed had failed to carry their burden under *Burdine, see IMPACT,* 893 F.2d at 1193-94;[8] thus, we concluded that the district court

---

[8]Our precedent requires that if a defendant raises as its legitimate, nondiscriminatory reason relative qualifications of the applicants, the defendant "must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made." *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 774 (11th Cir.1985); *see also Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061-62 (11th Cir.1994) (holding that an articulated reason based on after-acquired evidence does not meet the defendant's burden of production under *Burdine* ). The defendant cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision. *See IMPACT,* 893 F.2d at 1193-94. Likewise, a court may not assume, based on its own perusal of the record, that the decision-maker in a particular case was motivated by a legitimate reason when the defendant has offered none. *See IMPACT,* 893 F.2d at 1193-94; *cf. Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 775 (11th Cir.1982) (rejecting on appeal the legitimate nondiscriminatory reasons "assigned by the court" because they were "not [reasons] articulated by [the decision-makers] when they were questioned"); *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 626 (11th Cir.1983) (holding that the district court erred in finding that relative qualifications were a sufficient legitimate, nondiscriminatory reason when there was no evidence that the decision-maker knew of the applicants' relative qualifications when he made the adverse employment decision).

We determined in *IMPACT* that the defendants had failed to present any probative evidence at trial regarding the motivations of the decision-maker with regard to any of the plaintiffs' claims. *See IMPACT,* 893 F.2d at 1194 ("In this case, the defendants offered no evidence explaining any employment decision."). Although a State official testified that the Department of State hired only the best-qualified individuals for State jobs, the defendants presented no evidence regarding the particular decisions challenged by the plaintiffs. Thus, we held that the defendant failed to carry its burden of production under *Burdine,* explained in part II.A, *infra. See IMPACT,* 893 F.2d at 1193-94.

6

had erred in its judgment with regard to all claims. We therefore reversed and remanded with directions that the district court make specific findings with regard to the prima facie strength of each plaintiff's claim. *See id.* at 1194-95. We also held in *IMPACT* that the district court had erred in precluding pretrial discovery of employment testing evidence, and that the district court had incorrectly dismissed plaintiff Holton's claims at trial. *See id.* at 1196-97. Finally, we stated that the issue of recertification would "remain open for consideration by the trial court on remand." *Id.* at 1196.

On remand, the district court stated that each plaintiff seeking to establish a prima facie was required to prove the following four elements:

> 1) The plaintiff was a member of a protected class;
>
> 2) The plaintiff applied for and was qualified for the position in question;
>
> 3) A person not a member of the protected class *with equal or lesser qualifications* received the position, and;
>
> 4) The adverse employment action complained of was actually taken against him.

The court concluded that none of the plaintiffs had succeeded in establishing a prima facie case under these criteria with respect to any of their claims; therefore, no plaintiff was entitled to judgment in his or her favor. The court then concluded that, because no plaintiff had succeeded on his or her individual claim, the issue of recertification was moot. Finally, the court held that because there existed no certified class, and because it had dismissed all disparate impact claims before trial, employment testing evidence was irrelevant. Having disposed of all issues included in our *IMPACT*

7

mandate, the district court entered judgment, on May 22, 1995, against every plaintiff save Gracie Holton (now named Gracie Dejerinette).[9]

The plaintiffs now appeal that judgment, claiming that the district court erred on remand in 1) finding that none of the plaintiffs had established a prima facie case of discrimination at trial, 2) refusing to allow plaintiffs to pursue their claims concerning employment tests, and 3) refusing to recertify the class. We consider these claims in turn.

In part II.A, we conclude that the district court misapplied the law when evaluating the prima facie strength of most of the plaintiffs' claims; thus, we hold that the court erred in entering judgment for the defendants on those claims. We then look to the record ourselves to determine whether any of the erroneously-decided claims were supported by evidence at trial that, if believed by the district court as the trier of fact, would suffice to establish a prima facie case of discrimination in violation of Title VII. In part II.A.2, we vacate the court's judgment with respect to those claims for which the plaintiff established a prima facie case and remand for further proceedings. In part II.A.3, we affirm the court's judgment with regard to all other claims.

As we explain in part II.B, because we hold in part II.A that the plaintiffs' prima facie cases are determinative, we need not reach the plaintiffs' arguments regarding admissibility of testing evidence. With regard to the plaintiffs' third issue—recertification—we again leave the matter open for the district court on remand.

---

[9]The court stated that it would hold an evidentiary hearing on Gracie Dejerinette (neé Holton)'s claims. Thus, because the court did direct that the judgment be entered as a "final judgment" under Federal Rule of Civil Procedure 54(b), we had no jurisdiction to review the judgment under 28 U.S.C. § 1291 (1994). *See* Fed.R.Civ.P. 54(b). On July 19, 1995, however, Dejerinette gave notice of a settlement with the defendants and voluntary dismissed of all her claims. Her voluntary dismissal converted the district court's judgment into a final judgment and cleared the way under § 1291 for this appeal.

8

II.

A.

Appellants first claim that the district court erred in assessing the prima facie strength of their claims. Before addressing their argument, we pause to set forth the now-familiar framework of burdens of proof, established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that a Title VII plaintiff must satisfy to obtain judgment in her favor if she possesses only circumstantial evidence of discrimination.

Under *McDonnell Douglas,* a Title VII plaintiff must first establish a prima facie case of intentional discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. A valid prima facie case creates a presumption that discrimination has occurred.[10] *See Burdine,* 450 U.S.

---

[10]We note that the prima facie case establishes a *presumption,* and not an *inference,* of intentional discrimination. An inference is "[a] process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." *Black's Law Dictionary* 778 (6th ed. 1990). For instance, in a murder case, if the prosecution can establish that the victim was alive when the defendant entered his home, that the victim and the defendant were the only people in the house, that the defendant was carrying a pistol, that neighbors heard a gunshot while the defendant was in the victim's home, and that the victim was death when the defendant left his home, then a jury could reasonably infer that the defendant murdered the victim, even though no one testified to seeing the murder take place. In contrast, in an employment discrimination case, if the plaintiff can establish the elements of the prima facie case—e.g., that she is female, that she applied for a position with the defendant employer, that she was qualified for the position, and that the position was given to a male—it does not logically follow that the employer discriminated against the plaintiff on the basis of her sex. The prima facie case, standing alone, puts the evidence in equipoise—although one could reasonably conclude that the plaintiff was not hired because of her sex, one could just as reasonably conclude that the plaintiff was not hired because the employer did not like the suit she was wearing, or because the employer's son was also an applicant, or because another applicant agreed to work for half the posted salary, or any number of reasons other than sex discrimination. A factfinder cannot infer intentional discrimination from the prima facie case.

The prima facie case does, however, create a *presumption* of intentional discrimination. *See Burdine,* 450 U.S. at 254 & n.7, 101 S.Ct. at 1094 & n.7. A

9

presumption is "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established." *Black's Law Dictionary* 1185 (6th ed. 1990) A presumption does not follow logically from the facts establishing the presumption, but (in the case of a non-conclusive presumption) acts as a procedural device to force the party against whom the presumption operates to come forward with rebuttal evidence. *See* Robert Belton, *Burdens of Pleading and Proof in Discrimination Cases: Toward a Theory of Procedural Justice*, 34 Vand.L.Rev. 1205, 1222 (1981). The presumption of intentional discrimination in employment discrimination cases forces the employer—who is in the best position among the parties to know why certain employment decisions were made—to present evidence regarding why the plaintiff was not given the desired position.

The importance of the inference/presumption distinction is in the burden placed on the defendant at the *McDonnell Douglas* rebuttal stage. If establishment of the prima facie case created an *inference* of intentional discrimination, the defendant's legitimate, non-discriminatory explanation would be an affirmative defense. *Cf. NLRB v. McClain of Ga., Inc.,* 138 F.3d 1418, 1424 (11th Cir.1998) (holding in a National Labor Relations Act case that a showing that an employee's involvement in union activity was a motivating factor in the discharge of that employee creates an inference of anti-union animus; the employer can then raise the claim that the employee would have been discharged even had he not engaged in union activity as an affirmative defense). The defendant would therefore carry the burden of *persuasion* in regard to that explanation. *See Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 592 n.12 (11th Cir.1994). Because establishment of the prima facie case creates only a *presumption* of intentional discrimination, however, the defendant carries only the burden of *production* in regard to his legitimate, non-discriminatory explanation. *See id.; see also* Fed.R.Evid. 301 (1998) (noting that presumptions create a burden of production on the party against whom the presumption is directed, but not a burden of persuasion); *Black's Law Dictionary* 1185 (6th ed. 1990) (same). The burden is then on the plaintiff to prove that the proffered explanation is pretextual.

In many cases, this will be a distinction without a difference. For instance, if the plaintiff establishes a prima facie case of intentional discrimination and the defendant fails to produce any evidence impeaching that prima facie case or rebutting it with a legitimate, non-discriminatory reason for the employment decision, then the plaintiff prevails as a matter of law—regardless of whether the prima facie case is classified as a "presumption" or an "inference." *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied sub nom. Combs v. Meadowcraft Co.,* --- U.S. ---, ---, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *Thompkins v. Morris Brown College,* 752 F.2d 558, 562 (11th Cir.1985). In such a case the defendant has met neither the burden of production nor the burden of persuasion. There are, however, situations in which the distinction is important. We therefore feel the need to clarify this point, especially in

10

at 254 n. 7, 101 S.Ct. at 1094 n. 7; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied sub nom. Combs v. Meadowcraft Co.,* --- U.S. ----, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *Crawford v. Western Elec. Co.,* 745 F.2d 1373, 1376 (11th Cir.1984). If the prima facie case remains unrebutted, therefore, the plaintiff is entitled to judgment in her favor as a matter of law, provided that the trier of fact believes the evidence put forward to establish the prima facie case.[11] *See Combs,* 106 F.3d at 1528 ("If the trier of fact *believes* the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." (emphasis added) (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094)).

The defendant may rebut a prima facie case of intentional discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment decision of which the plaintiff complains. Although this burden is not "onerous," *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094, neither is it a mere formality. The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question; instead, it must raise "a genuine issue of fact as to

---

light of dicta in a few Eleventh Circuit cases that illustrate confusion on the issue. *See Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1310 (11th Cir.1998), *superseded in part,* 151 F.3d 1321 (11th Cir.1998); *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994).

The special concurrence argues that this distinction is needlessly complex and confusing. We, however, feel that the distinction is fairly simple, and that it is instead the dicta in the case law that is needlessly complex and confusing. As for the special concurrence's argument that the distinction is incorrect as applied to the *McDonnell Douglas* prima facie case, we note only that we have considered the points it raises and nevertheless stand by what we have written.

[11]The only evidence in the prima facie case that is likely to be in dispute is the plaintiff's qualifications—the plaintiff's sex, the existence of a job opening, and the sex of the person placed in that opening tend to be undisputed.

11

whether it discriminated against the plaintiff" by making that decision. *Id.* at 255, 101 S.Ct. at 1094. In other words, "the defendant must clearly set forth, through the introduction of admissible evidence," the reason for its adverse employment decision, and that reason "must be legally sufficient to justify a judgment for the defendant." *Id.; see also Trotter v. Board of Trustees of the Univ. of Ala.,* 91 F.3d 1449, 1455 (11th Cir.1996).

Once the defendant carries this burden and thereby rebuts the plaintiff's prima facie case, the initial presumption of intentional discrimination drops from the case. *See Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643 (11th Cir.1998) ("Successfully carrying this burden bursts the presumption of discrimination and leaves only the ultimate question—whether the employer's offered explanations are pretextual."). The plaintiff must then persuade the trier of fact that the defendant intentionally discriminated against her despite the defendant's assertion of a lawful reason for the challenged employment decision. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094-95; *Combs,* 106 F.3d at 1528 (citing *McDonnell Douglas* ). The plaintiff cannot simply stand on her prima facie case;[12] instead, she must convince the court that the evidence in the case *as a whole* preponderates in favor of a finding of intentional discrimination by the defendant. If she does so, she is entitled to judgment in her favor.

_____

[12]This is because a factfinder cannot infer intentional discrimination solely from establishment of the prima facie case. *See supra* note 10. We note, however, that the same evidence that is used to establish the prima facie case may also cast doubt on the employer's proffered legitimate, non-discriminatory basis for its decision. Thus, in some cases, the plaintiff, in order to prove intentional discrimination, will not need to produce any more evidence than what was required to establish the prima facie case. *See Arrington v. Cobb County,* 139 F.3d 865, 875 n. 20 (11th Cir.1998) ("A plaintiff may rely on the same evidence both to establish her prima facie case and to cast doubt on the defendant's non-discriminatory explanations."); *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 921 (11th Cir.1993) ("In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case.")

1.

Keeping this framework in mind, we turn to our decision in *IMPACT,* which is the source of the district court's mandate on remand.[13] In *IMPACT,* we held that the defendants had failed to produce any probative evidence of legitimate, nondiscriminatory reasons for their challenged employment decisions. If any plaintiff had established evidence at trial sufficient to raise a presumption of intentional discrimination, therefore, that presumption stood at the end of trial and the plaintiff was entitled to judgment in her favor if she convinced the trier of fact of the credibility of her prima facie case. Because the district court had not made findings of fact with regard to the prima facie strength of each plaintiff's claim, we remanded the plaintiffs' cases to the district court for the necessary determinations. The court on remand found that no plaintiff had established a prima facie case. The plaintiffs now contend that the district court erred in that determination.

We agree in part with the appellants' contention. On remand, the district court applied two incorrect legal standards when assessing the prima facie strength of the plaintiffs' claims. Any decision based on one or both of those standards, therefore, is in error.

First, the district court required each plaintiff to prove the following elements by a preponderance of the evidence:

> 1) The plaintiff was a member of a protected class;
>
> 2) The plaintiff applied for and was qualified for the position in question;
>
> 3) A person not a member of the protected class *with equal or lesser qualifications* received the position, and;

---

[13]Under the law of the case doctrine, we are bound by the factual findings and legal conclusions of that decision. *See Venn v. St. Paul Fire and Marine Ins. Co.,* 99 F.3d 1058, 1063 (11th Cir.1996).

13

4) The adverse employment action complained of was actually taken against him. In other words, the court required each plaintiff to prove that he or she was equally or more qualified than the successful applicant to hold each employment position in question. The plaintiffs claim that the court erred by including relative qualifications at the prima facie stage of the *McDonnell Douglas* framework. We agree.

In this circuit, we appear to have articulated different standards for a prima facie case depending on whether the relevant Title VII claim is classified as a "failure to hire" or a "failure to promote" claim.[14] There exist several different formulas for a "failure to promote" prima facie case, including a formula akin to that articulated by the district court. We note in passing that the promulgation of differing standards of proof for different types of injury under Title VII only promotes confusion and inconsistency, a result undesirable in any context, but one which is exacerbated in Title VII jurisprudence because of the general instability that pervades this area of the law. Thus, although the Court in *McDonnell Douglas* noted that it may be necessary to alter the requirements of the prima facie case somewhat to respond to unique fact patterns, *see McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, we believe that it is generally unwise to fragment the applicable legal standards in this area. That said, we proceed to examine the district court's formulation of a prima facie case as including proof of relative qualifications.

In *McDonnell Douglas,* the Supreme Court stated that a plaintiff may establish a prima facie case for a Title VII claim by showing

---

[14]Several plaintiffs in this case claim discrimination based on the Department's failure initially to hire them from outside the Department, while others base their claims on the Department's failure to promote them from within the Department to a position of greater responsibility and benefits. We believe, therefore, that this case presents both "types" of claims.

14

(i) that he belongs to a racial minority;

(ii) that he applied and was qualified for a job for which the employer was seeking applicants;

(iii) that, despite his qualifications, he was rejected; and

(iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.[15] This standard, however, was tailored to the particular case at hand—a case in which there was no showing the defendant employer had hired anyone for the plaintiff's coveted position. *See Green v. McDonnell-Douglas Corp.,* 299 F.Supp. 1100 (E.D.Mo.1969) (reciting the facts of the case but including no mention of a successful applicant); *Green v. McDonnell-Douglas Corp.,* 318 F.Supp. 846 (E.D.Mo.1970) (sam).[16] In *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980),[17] therefore, we added an alternative to the fourth element of the *McDonnell-Douglas* standard to address a situation in which the plaintiff "loses out" to another applicant in competition for the coveted promotion:

> [P]laintiffs may establish a prima facie violation by showing that they are members of a group protected by title VII, that they sought and were qualified for positions that [the defendant employer] was attempting to fill, that despite their qualifications they were rejected, and that after their rejection Western Electric *either* continued to attempt to fill the positions *or* in fact filled the positions with [persons outside the plaintiff's protected class].

[15]We note that this original formulation allows a plaintiff to establish her prima facie case without even showing that another person was hired for the job, let alone anything about the successful applicant.

[16]On appeal, the Eighth Circuit did not add any information regarding a possible successful applicant. *See Green v. McDonnell Douglas Corp.,* 463 F.2d 337 (8th Cir.1972). The court of appeals, however, noted both that the plaintiff was qualified for the job and that the employer was seeking workers of his qualifications. *Id.* at 339.

[17]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(citing *McDonnell-Douglas* ) (emphasis added).  This alternative was necessary because "the fourth *McDonnell-Douglas* criterion, that the position remained open and that the employer continued to seek applicants after the plaintiff's rejection, certainly should not be required when the plaintiff's rejection is simultaneous with the hiring or promotion of the person chosen to fill the position." *Simon v. Honeywell Inc.,* 642 F.2d 754, 755 n. 4 (5th Cir.1981) (citing *Burdine,* 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6).

The *Crawford* standard is well established in this circuit.  *See e.g., Coutu v. Martin County Bd. of County Commrs.,* 47 F.3d 1068, 1073 (11th Cir.1995);  *Welborn v. Reynolds Metals Co.,* 810 F.2d 1026, 1028 (11th Cir.1987);  *see also Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 773 (11th Cir.1985);  *McWilliams v. Escambia County Sch. Bd.,* 658 F.2d 326, 331 (5th Cir. Unit B 1981)[18] (*cited in* the district court's original order of August 11, 1986).[19]  In *Perryman v. Johnson Prods.  Co.,* 698 F.2d 1138 (11th Cir.1983), however, we "created," in dicta,[20] a very different prima facie standard, stating that:

> A plaintiff may establish a prima facie case of promotion discrimination by proving that he or she is a member of a protected minority, was qualified for and applied for the promotion, was rejected despite these qualifications, and that other employees *with equal or lesser qualifications* who were not members of the protected minority were promoted.  *Crawford*

---

[18]In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

[19]We recognize that when the plaintiff applies for a position for which there are a number of openings, it is often impossible to determine which successful applicant for the position actually got the "plaintiff's" berth for purposes of comparing class status.  In such a situation, it is sufficient to identify *any* successful applicant for the position.

[20]The issue on appeal in *Perryman* was whether the defendant had successfully rebutted the plaintiffs' prima facie case, *Perryman,* 698 F.2d at 1141;  thus, the elements of the prima facie case were not even in question and the formulation of the prima facie case is pure dicta.

16

*v. Western Electric Co., Inc.,* 614 F.2d 1300, 1315 (5th Cir.1980);  *Bundy v. Jackson,* 641 F.2d 934, 951 (C.A.D.C.1981).

*Perryman,* 698 F.2d at 1142 n. 7 (emphasis added).  Clearly *Crawford* does not support the addition of a "relative qualifications" element to the fourth prong of the *Crawford* prima facie standard.[21]

Although the second case *Perryman* cites as support, *Bundy v. Jackson,* may provide indirect support

---

[21]The context of the *Perryman* standard does, however, provide insight into why the *Perryman* court apparently miscited *Crawford.*  In *Perryman,* a group of plaintiffs brought both individual and class claims against the defendant employer, Johnson Products, claiming that Johnson Products had violated Title VII by "discriminating against women in hiring, promotion, and termination practices."  *See Perryman,* 698 F.2d at 1140.  The *Perryman* court, when reviewing the plaintiffs' claims en masse, stated that

> a prima facie case of discrimination in termination is established where the plaintiff proves by a preponderance of the evidence that he or she is a member of a protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class *or* was discharged while a person outside of the class with equal or lesser qualifications was retained.  *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982).

Because the *Perryman* case dealt with claims other than claims based on discharge, however, the court then stated that "A similar burden has been imposed on plaintiffs seeking to establish a prima facie case of discrimination in promotion," *id.* at 1142, and proceeded to articulate the prima facie case standard quoted in the text.  Apparently, the *Perryman* court overlooked the disjunctive nature of both the *Crawford* and the *Lee* prima facie standards;  neither case supports an element of relative qualifications if the defendant employer has filled the plaintiff's position with a person outside the plaintiff's protected class.

from outside the circuit,[22] we have found no explanation for why the *Perryman* court decided to alter the prima facie case in this way.

Since *Perryman,* we have several times included the "lesser or equal qualifications" prong in our articulation of a prima facie case for discrimination in failure to promote. *See e.g., Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642 (11th Cir.1998); *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 963 (11th Cir.1997); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539 n. 11 (11th Cir.1997); *Batey v. Stone,* 24 F.3d 1330, 1334 n. 11 (11th Cir.1994); *Hill v. Seaboard Coast Line R.R. Co.,* 885 F.2d 804, 809-10 (11th Cir.1989); *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988); *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 796 (11th Cir.1988). In only two of these cases, however, does the *Perryman* formulation give rise to a holding inconsistent with recognition of the *Crawford* prima facie standard as the law of the circuit.[23] More importantly, every

---

[22]The *Bundy* court stated that,

> to make out a prima facie case [for failure to promote] the plaintiff must show that she belongs to a protected group, that she was qualified for and applied for a promotion, that she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied.

*Bundy,* 641 F.2d at 951. The court, however, then explained that the above-quoted formula had to be altered slightly to fit *Bundy's* case because plaintiff Bundy had produced evidence of sexual harassment to support her claim. *Id.* The *Bundy* court stated that "[t]he most important difference between [*Bundy's*] formula and the McDonnell formula is that we are not requiring the plaintiff to show as part of her prima facie case that other employees who were no better qualified, but who were not similarly disadvantaged, were promoted at the time she was denied a promotion." *Id.* at 953.

[23]In *Wu,* the court cited the *Perryman* standard as the correct prima facie standard for a failure to promote case. *Wu,* 847 F.2d at 1483. The court then held that the district court was correct in determining that the plaintiff had failed to establish a prima facie case of sex discrimination for failure to promote because the plaintiff had "clearly failed to show she was qualified for promotion." *Id.* at 1484. The court made an alternative holding, however, based on the fact that

18

one of these cases apparently traces its articulation of the prima facie standard back to *Perryman* 's

footnote pronouncement.

---

the plaintiff had "also failed to prove that an equally or less qualified male was promoted during the time of her promotional application." *Id.*

> In *Hill,* even though the court quoted the *McDonnell-Douglas* standard verbatim—and therefore did not include a relative qualifications element—it stated that "the district court applied the incorrect [prima facie] standard" because the court required the plaintiff, "as part of his prima facie case, to show that a less qualified candidate was promoted in his place." *Hill,* 885 F.2d at 809 (emphasis omitted). The district court had erred, the *Hill* court explained, because "[a] plaintiff may establish a prima facie case even if he shows that the nonminority employee selected was equally as well qualified; he need not show, as part of his prima facie case, that his qualifications exceeded those of the nonminority employee." *Id.* at 809-10 (citing *Perryman* ) (emphasis omitted). Thus, *Hill* implies that a showing of equal qualifications is properly included as part of the plaintiff's prima facie case, although the court in *Hill* then partially contradicted this implication by stating that "although [the plaintiff] might prevail [on remand] in establishing a prima facie case, he could not overcome a legitimate business justification—i.e., choosing the most qualified candidates—specifically credited by the district court." *Id.* at 810.

> We believe, however, that neither *Wu* nor *Hill* is binding precedent establishing a prima facie standard contrary to that of *Crawford.* In both *Wu* and *Hill,* we reviewed the district court's *final judgment. See Wu,* 847 F.2d at 1483; *Hill,* 885 F.2d at 807. The Supreme Court, however, has made clear that once the defendant employer goes forward with sufficient evidence successfully to rebut a prima facie case, the determination of whether the plaintiff established her prima facie case is no longer relevant. *See United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.... [T]he District Court in this case should have proceeded to this specific question directly." (internal quotations omitted)). The factfinder's only task at that point is to determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant employer intentionally discriminated against her. Thus, the question of whether the plaintiff had successfully established a prima facie case was not properly before us in either case. Moreover, as explained *infra* in the text, Supreme Court precedent overrules the *Perryman* standard upon which both *Wu* and *Hill* are based.

19

Thus, in regard to the proper prima facie standard, we are faced with two conflicting lines of precedent. In deciding which line of precedent to follow, we are, ironically, faced with two conflicting lines of precedent. *See Harris v. Menendez,* 817 F.2d 737, 740 n. 5 (11th Cir.1987) (noting conflicting lines of precedent on this issue without choosing between them); *Kent v. Baker,* 815 F.2d 1395, 1399 n. 3 (11th Cir.1987) (same). One line of precedent holds that when circuit authority is in conflict, a panel should look to the precedents that are most consistent with Supreme Court cases or the weight of authority within the circuit; if there is no sufficiently analogous Supreme Court case and the Eleventh Circuit cases are somewhat evenly divided, then the panel should look to common sense and reason. *See Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 794, 797-98 (11th Cir.1988); *Dorse v. Armstrong World Indus., Inc.,* 798 F.2d 1372, 1376 (11th Cir.1986); *Manufacturing Research Corp. v. Graybar Elec. Co., Inc.,* 679 F.2d 1355, 1360 n. 12 (11th Cir.1982); *United States v. Hobson,* 672 F.2d 825, 827 (11th Cir.1982); *see also United States v. Gort,* 737 F.2d 1560, 1564 (11th Cir.1984) (following later line of precedent because "it is clearly the more dominant and better reasoned one"). The other line of precedent holds that when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel. *See Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1380 n. 10 (11th Cir.1997); *Robinson v. Tanner,* 798 F.2d 1378, 1383 (11th Cir.1986); *see also Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (holding that decisions of prior panels are binding on subsequent panels, and can be overturned only by the court sitting en banc).

We believe that the latter of these conflict rules—the "earliest case" rule—is the correct one, because of the importance of the prior precedent rule.[24] The prior precedent rule, which binds later panels to the decisions of former panels, is essential to maintaining stability in the law. The rule is "emphatic" and "firmly established" in the Eleventh Circuit. *See Cargill v. Turpin,* 120 F.3d 1366, 1386 (11th Cir.1997); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993); *see also United States v. Steele,* 117 F.3d 1231 (11th Cir.1997) (following prior precedent despite explicit disagreement), *rev'd on other grounds, United States v. Steele,* 147 F.3d 1316 (11th Cir.1998) (en banc). Of course, by adopting the "earliest case" rule to resolve intra-circuit splits, we are still in a sense ignoring the prior panel precedent rule—by choosing one line of cases, we are implicitly overruling the other line of cases. This is, however, a necessary consequence of an intra-circuit split, and the rule we adopt is more respectful of the prior panel precedent rule than the alternative "common sense and reason" rule, which essentially tells judges that once they find a division of authority they are free to throw precedent to the wind.[25] In this case, the *Crawford* standard (established in 1980) predates the *Perryman* standard (established in 1983), and is therefore the standard to be applied in the Eleventh Circuit.[26]

In addition to the controlling precedent within the Eleventh Circuit, the Supreme Court cases of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d

[24]We note, however, that our holding in this case would be the same under either of the intra-circuit conflict rules.

[25]The "earliest case" rule also has the virtue (if consistently applied) of bringing intracircuit splits to a screeching halt; the "common sense and reason" rule, in contrast, can drag such splits out indefinitely as different panels reach different conclusions about what is common-sensical and reasonable.

[26]The *Crawford* standard can in fact be traced back even earlier than 1980 to the case of *East v. Romine, Inc.,* 518 F.2d 332 (5th Cir.1975), discussed *infra.*

207 (1981) and *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) have explicitly addressed the issue of relative qualifications in a way that accords with the *Crawford* standard. The story of the first of these cases, *Burdine,* begins with the case of *East v. Romine, Inc.,* 518 F.2d 332 (5th Cir.1975), decided eight years prior to *Perryman.* In *East,* plaintiff Cora East, a welder from Savannah, Georgia, brought suit against defendant Romine, Inc., a construction business that hired welders, under Title VII, claiming that she was denied a position at the company because of her sex. We stated that, to establish a prima facie case of discrimination, East had to show:

> (1) that [she] belong[ed] to a group protected by Title VII; (2) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite [her] qualifications, [s]he was rejected; and (4) that, after [her] rejection the position remained open and the employer continued to seek applicants among persons of [East's] qualifications.

*East,* 518 F.2d at 337 (citing *McDonnell-Douglas* ). We then found that East had established a prima facie case with respect to one of her claims because:

> As a woman, Ms. East is in a group protected by Title VII. She formally applied for a welding job and was at least presumptively qualified on the basis of an application which showed a long history of welding work. Romine, Inc. accepted applications whenever they came in, and Ms. East was not offered a job. Lastly, and the crucial distinction between this claim and that for 1968,[27] Romine hired nine welders within six months after East made her application.

---

[27]We found that Romine failed to establish a prima facie case with regard to the 1968 claim because "no position was open at the time of East's application and no position "remained' open. Rather, Romine was not doing any hiring ... for at least the next six months." *East,* 518 F.2d at 337. Thus, because "there [was] no indication in the record that the decision not to put anyone on the payroll was a subterfuge for a discriminatory intent," East could not show that "after [her] rejection, the position remained open and the employer continued to seek applicants from persons of [her] qualifications." *Id.* By so holding with regard to East's "1968 claim," we implied that the fourth prong of the *McDonnell-Douglas*—the "remaining open" prong to which both the *Crawford* and *Perryman* standards add—was originally included only to ensure that the position applied for was actually "open" at the time of application, and that the defendant employer intended to fill the position.

22

*Id.* at 338 (footnote omitted). We note first that by so finding, we clearly did not require East to prove anything regarding her qualifications relative to the "nine welders [hired] within six months" after she applied for a welding position—the fact that the other welders were hired was sufficient to establish that the position was actually "in contention" at the time that East applied. Thus, *East* applied the later-articulated *Crawford* standard. Most importantly, however, after finding that East had successfully established a prima facie case of sex discrimination, we proceeded to evaluate Romine's rebuttal evidence. We held that the defendant had failed to carry its rebuttal burden because it *failed to present evidence of relative qualifications:* "[C]omparative evidence lies at the heart of a rebuttal of a prima facie case of employment discrimination.... When a prima facie case of discrimination has been made out, then we cannot presume that the answer lies in the [successful applicant's] judicially cognizable superior credentials." *Id.* at 339 (emphasis omitted).[28] Thus, in *East,* we clearly placed relative qualifications in the second stage of the *McDonnell-Douglas* framework, *not* the prima facie stage.

Four years later, we adopted much of *East* wholecloth in *Burdine v. Texas Department of Community Affairs,* 608 F.2d 563 (5th Cir.1979). In *Burdine,* however, we interpreted *East* as establishing a rule that a defendant could not succeed in defending against a Title VII claim *unless* it established that the successful applicant for the plaintiff's coveted position was more qualified than the plaintiff. *See id.,* 608 F.2d at 567.

The Supreme Court subsequently granted certiorari in *Burdine.* In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (commonly

---

[28]This statement provides further support for our decision in *IMPACT. See supra* note 8.

referred to as "*Burdine* " in "the *McDonnell-Douglas-Burdine* " framework), the Court held the

following:

> The Court of Appeals [ ] erred in requiring the defendant to prove by objective evidence that the person hired or promoted was more qualified than the plaintiff. *McDonnell-Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally. The Court of Appeals' rule would require the employer to show that the plaintiff's objective qualifications were inferior to those of the person selected. If it cannot, a court would, in effect, conclude that it has discriminated....

> ... Title VII, however, does not demand that an employer give preferential treatment to minorities or women....

> The view of the Court of Appeals can be read, we think, as requiring the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.

*Id.* at 258-59, 101 S.Ct. at 1096-97 (citations omitted). Thus, the Supreme Court overruled the

portions of our decision in *East* that 1) imposed a burden of *persuasion* instead of production on the

employer during the rebuttal stage of *McDonnell-Douglas,* and 2) required the *defendant* to prove

that the plaintiff was less qualified than the successful applicant to succeed in defending against a

Title VII claim. *See Burdine v. Texas Dep't of Community Affairs,* 647 F.2d 513, 514 (5th Cir.1981)

(reiterating the Court's holdings on remand, and explaining how the Court's decision applies to cases

in this circuit); *Johnson v. Uncle Ben's, Inc.,* 657 F.2d 750, 752 (same). The *Burdine* Court did *not,*

however, overrule the portion of *East* that placed relative qualifications in the rebuttal stage of the

*McDonnell-Douglas* framework. In fact, the Court implicitly *affirmed* this placement by stating that

"[t]he fact that a court may think that the *employer* misjudged the qualifications of the applicants

does not in itself expose him to Title VII liability, *although this may be probative of whether the*

24

*employer's reasons are pretexts for discrimination.*" In other words, the Supreme Court implied that it is the *employer* who initially presents evidence of relative qualifications, not the employee.

Of course *Perryman* and its progeny were decided after the Supreme Court's decision in *Burdine.* In light of *East,* however—which remains binding precedent—and of the Court's implicit affirmation of *East* 's relevant holding, we believe that the articulation in the *Perryman* cases of a prima facie standard that includes proof of relative qualifications is quite suspect.

The Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), further clarifies the place of relative qualifications in the *McDonnell-Douglas* framework and ultimately prohibits us from imposing on the plaintiff the burden of proving relative qualifications at the prima facie stage.[29] In *Patterson,* Brenda Patterson, a black woman, brought suit against her employer under 42 U.S.C. § 1981, claiming that the employer "had harassed her, failed to promote her ... and then discharged her, all because of her race." *Patterson,* 491 U.S. at 169, 109 S.Ct. at 2368-69. As its *rebuttal to Patterson's prima facie case,* the defendant employer claimed that the successful applicants were more qualified than Patterson to perform the position

---

[29]Since *Burdine,* we have continually recognized that relative qualifications belong in the rebuttal stage of the *McDonnell-Douglas* framework, not the prima facie stage. *See, e.g., Gilchrist v. Bolger,* 733 F.2d 1551, 1553 (11th Cir.1984) (recognizing as a sufficient legitimate nondiscriminatory reason for denying plaintiff a promotion was "the fact that "[t]he man drawn for the [coveted] position was selected because of his greater knowledge of postal requirements and because of [the plaintiff's] attendance problems' "); *Clark v. Huntsville City Bd. of Educ.,* 717 F.2d 525, 527 (11th Cir.1983) ("The defendants successfully rebutted the [prima facie] presumption through evidence that they selected [the successful applicant] due to his superior qualifications for the position."); *Olafson v. Dade County Sch. Bd.,* 651 F.2d 393, 395 (5th Cir.1981) (stating that the defendant employer successfully rebutted the plaintiff's prima facie case by "presenting evidence that [the successful applicant was successful] not because he was a man, but because, in their considered opinions, he was the best person for the job. It was then incumbent on the plaintiff ... to prove she was "the victim of intentional' discrimination" (footnote omitted)); *see also Hill,* 885 F.2d at 810.

to which she sought promotion. *See Patterson v. McLean Credit Union,* 805 F.2d 1143, 1147 (4th Cir.1986) ("[O]nce an employer has advanced superior qualification as a legitimate nondiscriminatory reason for favoring another employee over the claimant, the burden of persuasion is upon the claimant to satisfy the trier of fact that the employer's proffered reason is pretextual.... That was the situation here"). After a jury trial, the district court instructed the jury that Patterson could not succeed on her claim for failure to promote unless she showed that she "was better qualified than the white employee she allege[d] was promoted in her stead." *Patterson,* 491 U.S. at 170, 109 S.Ct. at 2369. Patterson challenged the instruction on appeal, but the Fourth Circuit affirmed. *See Patterson,* 805 F.2d at 1146. The Supreme Court granted certiorari to determine whether the district court's instruction was in error. *See Patterson,* 491 U.S. at 170-71, 109 S.Ct. at 2369.[30]

On review, the Court held that "the District court erred when it instructed the jury that petitioner had to prove that she was better qualified than the white employee who allegedly received the promotion." *Id.* at 186, 109 S.Ct. at 2377. The Court then explained that the *McDonnell-Douglas* framework for Title VII applies equally well in section 1981 cases, but that the Court of Appeals had "erred in describing petitioner's burden" under *McDonnell-Douglas. Id.* at 186, 109

---

[30]The Court also granted certiorari to determine whether Patterson's claim of racial harassment was cognizable under 42 U.S.C. § 1981 although it did not pertain to the formation of a contract. *See Patterson,* 491 U.S. at 170, 109 S.Ct. at 2369. The *Patterson* Court answered this question in the negative, *see id.* at 171, 109 S.Ct. at 2369, a holding that was later superseded by the 1991 amendments to the Civil Rights Act. *See Vance v. Southern Bell Tel. and Tel. Co.,* 983 F.2d 1573, 1577 (11th Cir.1993) ("One effect of the 1991 Act, in cases where it applies, is to make the rule in *Patterson* obsolete by statutorily adding certain categories of post-hiring discrimination to the list of practices liable to suit under section 1981.").

S.Ct. at 2378. The Court then explicitly adopted the *Crawford* standard, and clarified the place of

relative qualifications in the *McDonnell-Douglas* framework:

> Under our well-established framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. The burden is not onerous. here, petitioner need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.

> ... [T]he employer [must then] present evidence that the plaintiff was rejected, or the other applicant was chosen, for a legitimate nondiscriminatory reason. Here, respondent presented evidence that it gave the job to the white applicant because she was better qualified for the position, and therefore rebutted any presumption of discrimination that petitioner may have established....

> Although petitioner retains the ultimate burden of persuasion, our cases make clear that she must also have the opportunity to demonstrate that respondent's proffered reasons for its decision were not its true reasons. In doing so, petitioner is not limited to presenting evidence of a certain type....

> [Petitioner] might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position. The District Court erred, however, in instructing the jury that in order to succeed petitioner was *required* to make such a showing.... It was, therefore, error for the District Court to instruct the jury that petitioner could carry her burden of persuasion only by showing that she was in fact better qualified than the white applicant who got the job.

*Id.* at 186-88, 109 S.Ct. at 2378-79 (footnote and citations omitted).

Thus, under *Patterson,* we may *never* require a plaintiff to establish that she is more qualified

than the successful promotee, let alone impose that requirement at the prima facie stage. We believe

that *Patterson* also prohibits us from requiring a plaintiff to prove equal qualifications at the prima

facie stage. We cannot imagine that the Supreme Court would speak so strongly regarding the lack

of any burden to prove lesser qualifications and still leave available to the defendant at summary

27

judgment the argument that the plaintiff failed to prove equal qualifications, especially in light of its clear affirmation of the *Crawford* alternatives.

We also note that a prima facie standard that includes relative qualifications as a necessary element runs contrary to the policies underlying the *McDonnell-Douglas* prima facie case. As explained in footnote 10, *supra,* the prima facie case enables the plaintiff to reach the legal presumption of discrimination that shifts the burden of producing evidence to the defendant employer. This presumption ensures that a plaintiff who cannot establish that the employer harbored a discriminatory animus towards her may still survive a motion for judgment as a matter of law at the close of her case and thus force the employer to articulate its motives for the challenged employment decision so that the plaintiff has an opportunity to raise an inference of intentional discrimination by circumstantial evidence. The presumption, therefore, accounts for the disparity in access to information between employee and employer regarding the employer's true motives for making the challenged employment decision.

The *Crawford* standard sufficiently accounts for this disparity. It enables the plaintiff employee to establish a prima facie case or intentional discrimination by presenting evidence that is (1) in the employee's possession already (membership in a protected class, qualification, the fact of application for the position, rejection), and (2) objectively verifiable and easily obtainable (the fact that another person received the coveted position or the fact that the position remained open and available to persons of the plaintiff's qualifications). The *Perryman* standard, however, introduces the element of relative qualifications—the evidence of which is not likely to be in the plaintiff's possession and may not easily obtainable or objectively verifiable. Only the employer knows whether it truly considered relative qualifications when determining whether to promote the plaintiff,

28

and only the employer can establish what qualifications it actually used to make its promotion decisions. Further, if the employer utilized subjective qualifications in making the challenged decision, there is no way for the plaintiff employee to determine how he "ranked" according to those subjective qualifications in the decisionmaker's mind. It is therefore appropriate to place the burden of articulating those qualifications—if relevant—on the employer, not the employee.

In light of our own precedent and the decisions by the Supreme Court in *Burdine* and *Patterson,* we hold that district court in this case erred in imposing as part of the prima facie case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position. Although a plaintiff may be forced to address relative qualifications if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications before then; she need only prove that she herself was qualified to perform the coveted job.

The district court also made a second error when assessing the strength of the plaintiffs' prima facie case for each of their claims. Several times the court found that a plaintiff had not established a prima facie case with respect to one or more of her claims because the plaintiff failed to identify the successful applicant for the coveted position by name, testifying only as to the applicant's race. A plaintiff, however, need not identify the successful applicant for a position under the *McDonnell-Douglas* prima facie framework; she is only required to establish that the successful applicant is not within her protected class.

We hold, therefore, that the district court erred in entering judgment for the defendants whenever it based on its finding of no prima facie case on either the plaintiff's failure to prove relative qualifications, the plaintiff's failure to identify the successful applicant by name, or on both

of these standards. For each erroneously-decided claim, we now examine the record ourselves to determine whether the plaintiff indeed produced evidence at trial that, if credible, was sufficient to create a prima facie case. For those claims that do pass muster, we vacate the district court's judgment and remand for a credibility finding.[31] For those claims with regard to which the plaintiff failed to present evidence sufficient to support a prima facie case, however, we affirm the district court because a Title VII plaintiff cannot succeed in proving that she was intentionally discriminated against if she does not establish a prima facie case of discrimination. *See Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1561 (11th Cir.1992) ("[T]his court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court."). In addition, in a minority of cases, the district court did not base its judgment on incorrect legal standards, but correctly applied the law. For this group of claims, we review the district court's ultimate finding of nondiscrimination under a clearly erroneous standard. *See Eastland v. Tennessee Valley Auth.,* 704 F.2d 613, 620 (11th Cir.1983). We find that the record supports the district court's findings, and we are not left with the "definite and firm conviction that mistake has been committed." *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed.2d 746 (1948). We therefore affirm the court's judgment with regard to these claims as well.

2.

---

[31]Because in *IMPACT* we held that the defendants had failed to satisfy their burden of production under *Burdine,* if the district court finds a plaintiff's evidence on a given claim credible on remand, it must enter judgment for the plaintiff on that claim. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 ("*If the trier of fact believes the plaintiff's evidence,* and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." (emphasis added) (*cited in Combs,* 106 F.3d at 1528)). The trial court is best equipped to make this credibility finding.

We vacate the court's judgment with regard to the following claims (listed by plaintiff) and remand them for further proceedings:[32]

Diann Walker:

Clerk V, Division of Elections, May 1978 (Tr. 26:16-18).[33] Staff Assistant II, Corporations (26:31-35). Staff Assistant II, Elections, February 1979 (26:37). Secretary IV, Archives, May 1980 (26:45-26:47, 55:29-55:31). Secretary IV, Office of the Secretary of State, May 1980 (55:30-31).

Charles Stewart:

Bureau Chief of Administrative Code, July 1977 (36:12-36:13, 36:15).

Bureau Chief of Election Records, 1979 (36:14-36:16). Office Operations Supervisor I, October 1979 (36:28-29).

Dorothy Roberts:

Accountant III, Administrative Services, February 1979 (36:61-36:65).[34]

Barbara King:

---

[32]The panel in *IMPACT* found that 1) interveners Ross and Isaac had established a prima facie case at trial for all their claims with respect to every element except non-protected class status under Title VII, and 2) the evidence at trial established that all the plaintiffs were qualified for all the positions they sought. *IMPACT,* 893 F.2d at 1191-92 & n. 3. We therefore abide by these findings when addressing the strength of each of the plaintiffs' claims *infra. See* note 13, *supra.*

[33]We identify each claim by the identifying characteristics noted by the district court in its order on remand. The cites following the claims are cites to the record on appeal. Cites from the trial transcript ("x:x") are in the form of volume:page. Cites to Exhibits are in bluebook form.

[34]The district court also entered judgment for the defendants on Roberts' claim that she was discriminatorily denied a promotion to Accountant IV in Administrative Services. Roberts had claimed that if she had received the Accountant III position, she would have been upgraded to an Accountant IV when that position was reclassified during a Department reorganization. Because Roberts' argument relates to the relief she was entitled to if she had received the Accountant III position, and does not state a separate claim for failure to promote, we do not address this claim.

Secretary III, March 1979 (38:17, 38:17, 38:17-18).[35] Secretary III, General Counsel's Office, April 1979 (38:18-38:19).[36] Secretary III, Archives, April 1979 (38:24-38:25). Word Processor Systems Operator I, May 1980 (38:27).

Clerk V, June 1980 (38:28-38:29). Secretary IV, June 1980 (38:29-38:30). Secretary IV, August 1980 (38:30-38:31).

Pearl Williams:

Clerk IV, March 1980 (38:50-38:51). Secretary IV, 1982 (38:52, 38:54-38:55). Administrative Secretary, 1984/85 (filled by Elinor Kalfas) (38:57-58).[37] Administrative Secretary 1984/85 (filled by Nancy Downing) (38:57-58). Secretary IV, 1985 (38:57-58). Senior Clerk, 1985 (38:58-59; 46:97-106).[38]

Louvenia Jones:

---

[35]King established a prima facie case for failure to promote to a Secretary II position in March 1979. *See* record, vol. 38, pp. 18-19. We construe the court's reference to a "Secretary III" position applied for in March 1979 as a reference to this claim.

[36]Although the district court identified this position as a Secretary III position, King's counsel referred to the position during direct examination of King at trial as a Secretary II position. *See* record, vol. 38, pp. 18-19.

[37]The district court held that Williams had not established a prima facie case for this claim and the next-listed claim because it found that "[t]he personnel cards of [Kalfas and Downing] showed that neither Kalfas nor Downing occupied a position of Administrative Secretary in 1984 and 1985." Downing's personnel card (Defs.' Ex. 266(1)), however, shows that she was indeed promoted to an "Admin.Sec." position in Elections (the section of the Department to which Williams testified she applied) on January 1, 1986. Moreover, Williams testified at trial that persons holding Secretary IV positions were also referred to as "Administrative Secretaries" within the Department, *see* record, vol. 38, p. 57, *see also* record, vol. 46, p. 48 (identical testimony by Jay Kassees, witness for the defense), and Kalfas' personnel card (Defs.' Ex. 272) reflects that she was promoted to a Secretary IV position in Elections on January 3, 1984. We therefore vacate the district court's judgment with respect to Williams' claims for these two positions because we find that the court's finding is unsupported by the evidence.

[38]The district court found that Williams failed to establish a prima facie case with respect to this claim because she testified that she had applied for the position in 1985, but the successful applicant for the position was not hired until in January 1986. Because a plaintiff must only establish that her coveted position remained open or was filled by someone outside her protected class—she need not establish that the position was filled within any certain amount of time—we find the district court's reasoning unsupportable and therefore vacate the court's judgment with respect to this claim.

Clerk II, Library Services, January 1977 (30:13 & 43:13); Pls.' Ex. Z-33, p. 167.

Clerk II, Corporations, April 1977 (30:13 & 43:13); Pls.' Ex. Z-33, p. 167. Clerk III, Elections, July 1977 (30:16-18 & 43:14); Pls.' Ex. Z-33, p. 100. Staff Assistant I, July 1982 (30:33-34 & 46:112-13); Pls.' Exs. A-5 & 265(1).

Rosa Henderson:

Clerk III, Elections (38:89-90). Clerk III, Corporations, 1977 (38:87-38:89). Clerk V, Corporations, 1979 (38:94-38:95). Clerk V, Corporations, January 1980 (38:96 & 38:94). Clerk V, 1980 (38:97-38:98). Documentary Examiner, UCC of Corporations (38:98-38:101).

Delores Colston:

Secretary IV, Elections, April 1977 (39:33-34).[39]

Linda Isaac:

Clerk I, September 1977 (47:74 & Pls.' Ex. Z-33).[40] Clerk II, September 1977 (47:74 & Pls.' Ex. Z-33 p. 167). Clerk III, October 1977 (47:74 & Pls.' Ex. Z-33 p. 100). Clerk III, March 1979 (47:74 & Pls.' Ex. Z-33 p. 101). Clerk V, July 1980 (47:74 & Pls.' Ex. Z-33 p. 67).

Clerk V, August 1980 (47:74 p. 68).

Jacquelyn Ross:

Secretary III, January 1979 (47:73-74 & Pls.' Ex. Z-33 p. 80).

On remand, we direct the district court to make credibility findings as to the plaintiff's evidence for each of these claims. If the court credits the plaintiffs' evidence establishing the *McDonnell-Douglas* elements of a prima facie case, it must enter judgment in favor of the plaintiff

---

[39]The district court did not specifically identify this claim, referring only to "an unknown number of Clerk-Typist IV, Secretary III and Secretary IV positions between 1974 and 1977." Colston, however, established a prima facie case with regard to this claim at trial; thus, we construe her appeal from the court's judgment on remand as including an appeal from the dismissal of this claim.

[40]For all claims brought by plaintiffs Isaac and Ross, we cite only to record evidence establishing that the successful applicant for the position at issue did not belong to the plaintiff's protected class.

on that claim.  *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.  If the court finds the evidence not credible, it must enter judgment in favor of the defendants.

3.

We affirm the court's judgment with regard to the following claims:

Diann Walker:

> Clerk V, Corporations, August 1979 (successful applicant "Buck" Kohr). Clerk V, Corporations, August 1979 (successful applicant Kevin St. Louis). Clerk V, Corporations August 1979 (successful applicant Sandra Inks). Executive Secretary I, Archives, June 1980. Administrative Assistant II, Elections, August 1982. Executive Secretary II.

Barbara King:

> Clerk Typist III, February 1979. Secretary III, Cultural Affairs, April 1979.

> Secretary III, Archives, April 1979. Secretary III, Office of the Secretary of State, March 1980. Secretary III, Office of the Secretary of State, April 1980.

Pearl Williams:

> Clerk-Typist III, Corporations, February 1979. Secretary IV, April 1982. Administrative Secretary, 1984/85 (filled by Barbara Birks)

Louvenia Jones:

> Bookkeeping Machine Operator, September 1978. Staff Assistant I, August 1981. Record Management Technician, Archives, 1984.[41]

Rosa Henderson:

> Clerk III, Corporations, 1977. Microphotographer, Archives, 1978. Fiscal Clerk II, January 1986.

---

[41]The district court's order on remand refers to "about a dozen Clerk I and Clerk II positions" for which Jones testified she had applied before April 1977.  The district court considered that Jones' allegations concerning these claims were too vague to make out a case for Title VII relief and therefore dismissed them.  We agree;  thus, we affirm the district court's judgment with regard to these claims.

34

Delores Colston:

> Clerk Typist III, July 1978. Clerk Typist III, August 1979. Audio-Visual Technician, August 1979. Clerk Typist III, August 1979. Secretary III, August 1979.

> Secretary IV, August 1981.

Jacquelyn Ross:

> Clerk Typist III, January 1980.[42]

## B.

The plaintiffs next contend that the district court erred on remand by failing to consider employment examination evidence. Employment examination evidence, however, is irrelevant to a prima facie case of disparate treatment; thus, because all of the plaintiffs' claims may now be resolved at the prima facie stage, this issue is moot.

## C.

Finally, plaintiffs claim that our mandate in *IMPACT* directed the district court to recertify the class on remand, and that the court erred by failing to do so. This is simply incorrect.

In its original order, the district court entered judgment against every plaintiff; thus, there existed no representative who could adequately represent a class, and the issue of recertification was moot. On appeal, because we held that the district court had erred in entering judgment for the defendants on all counts, we "opened the door" to a finding of nondiscrimination for at least some of the plaintiffs. Thus, on remand after *IMPACT,* the issue of recertification was "revived."[43]

---

[42]Although the district court purported to pass judgment on this claim, plaintiffs' counsel stated for the record that Ross was withdrawing this claim. *See* record, vol. 47, p. 74.

[43]If the trial court, on remand, had entered judgment for one or more putative class representatives, the representative or representatives might have been able to appeal the court's denial of recertification to this court despite the favorable judgment. *See Deposit Guaranty Nat'l*

Because we wished the district court to address the continued validity of its decertification order before we did, however, we specifically reserved judgment on the issue of recertification, stating only that the matter "remain[ed] open for consideration by the trial court on remand." This statement was not a mandate to the district court *requiring* it to revisit the issue of certification, but merely a reminder to the district court of the legal ramifications of our reversal of its judgment.

On remand, the district court again entered judgment against every plaintiff, thereby "re-mooting" the issue of recertification. In the instant appeal, we hold that the district court erred in entering judgment against several plaintiffs; thus, we have once again provided the district court with possible representatives for the putative class, resurrecting the issue of recertification a second time. We still wish, however, to leave the initial determination regarding recertification to the district court. We therefore leave the matter open on remand. We intimate no view as to the propriety of certifying a class if the district court finds that at least one plaintiff is entitled to judgment in her favor.

### III.

For the reasons stated above, we AFFIRM the district court's judgment in part and VACATE the judgment in part. We REMAND with directions that the original district court determine, with regard to each vacated claim listed in part II.A.2, whether the plaintiff's evidence of a prima facie case is credible evidence. If the court credits the plaintiffs' evidence establishing the *McDonnell-Douglas* elements of a prima facie case, we direct it to adjudge the defendants liable on that claim,

---

*Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 1175, 63 L.Ed.2d 427 (1980) (holding that a district court's entry of judgment in favor of putative class representatives on their individual claims but "over their objections" does not preclude the representatives from appealing an adverse certification ruling on appeal).

and thereafter to fashion an appropriate remedy.[44]  We deny the plaintiffs' request to assign this case to another judge on remand.

SO ORDERED.

CARNES, Circuit Judge, concurring specially:

I concur in the court's judgment and most of the language of the majority opinion.  I write separately, however, because I am concerned about some of the dicta in footnote 10 of the majority opinion regarding the legal effect of a Title VII prima facie case.  Instead of clarifying matters as it seeks to do, the discussion in that footnote may serve only to confuse things, and some of the statements in it are inconsistent with prior circuit precedent.

The majority opinion states:  "We note that the prima facie case establishes a *presumption,* and not an *inference,* of intentional discrimination."  Majority Op. at 371 n. 10 (emphasis in the original).  While one of the footnotes in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981), does support that statement, our decisions since *Burdine* have consistently held that a prima facie case creates an inference of intentional discrimination, *see, e.g., Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1323 (11th Cir.1998) (plaintiff has failed to establish prima facie case because "one still cannot *infer* it is more likely than not that her termination was based on an illegal discriminatory criterion."); *Eskra v. Provident Life and Accident Ins. Co.,* 125 F.3d 1406, 1411 (11th Cir.1997) ("If a prima facie case is established, the *inference* is raised that discriminatory intent motivated the adverse

---

[44]This case was filed well before the effective date of the 1991 amendments to Title VII that allow a Title VII plaintiff to recover damages.  Thus, the plaintiffs will be limited to equitable relief on remand.  *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (holding that the 1991 amendments do not apply retroactively); *Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (same).

employment action...."); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997) ("Once a prima facie case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the *inference* of retaliation."); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) ("Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an *inference* of discrimination"); *Maddow v. Procter & Gamble Co. Inc.,* 107 F.3d 846, 851 (11th Cir.1997) ("[O]nce a plaintiff has made a prima facie case, the employer may then rebut the *inference* of discrimination by providing legitimate, non-discriminatory reasons for its decision."); *Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 n. 12 (11th Cir.1995) ("Whether a prima facie case has been established is a fact specific inquiry: Would an ordinary person reasonably *infer* discrimination if the facts presented remained unrebutted?"); *Coutu v. Martin County Bd. of County Commissioners,* 47 F.3d 1068, 1073 (11th Cir.1995) ("A prima facie case of discrimination raises the *inference* that discriminatory intent motivated the adverse employment action."); *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994) ("[T]he plaintiff must create an *inference* of discrimination by establishing a prima facie case by a preponderance of the evidence.") (emphasis added in all parentheticals). There are not, as the majority opinion asserts, merely "a few Eleventh Circuit cases" which ostensibly conflict with the majority's statements. Instead, a long line of our prior decisions clearly recognize and emphatically state that a prima facie case will support an inference of discrimination.

The reason that our long line of prior decisions is wrong, explains the majority, is that if we treat the prima facie case as creating an inference of discrimination, "the defendant's legitimate, non-discriminatory explanation would be an affirmative defense [and][t]he defendant would

therefore carry the burden of persuasion in regard to that explanation." Majority Op. at 371-72 n. 10. That would come as quite a surprise to all of the judges on the panels that issued the eight decisions cited in the prior paragraph. Every one of those eight decisions recognizes that a prima facie case creates an inference of discrimination, but none suggests that such an inference transforms the defendant's explanation into an affirmative defense. To the contrary, those decisions recognize, some of them explicitly, that even with the inference created by the prima facie case, the defendant's burden in regard to a neutral explanation is only a burden of production, not one of persuasion. *See, e.g., Eskra,* 125 F.3d at 1411; *Walker,* 53 F.3d at 1556 ("Once the defendant carries the *burden of production,* the plaintiff must prove through presentation of a preponderance of the evidence that the employer had a discriminatory intent."); *Coutu,* 47 F.3d at 1073 ("Once the employer satisfies this *burden of production,* the plaintiff then has the burden of persuading the court that the proffered reason is a pretext for the true discriminatory reason."); *Green,* 25 F.3d at 978 ("[O]nce the plaintiff establishes a prima facie case, the *burden of production* shifts to the defendant to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employee's rejection.") (emphasis added in all parentheticals).

Our prior decisions recognize that whether a particular explanation or response is an affirmative defense is not dependent on whether the plaintiff's evidence is sufficient to support an inference. *See also* 5 Wright and Miller, *Federal Practice and Procedure,* Civil 2d § 1271 (discussing criteria used to determine whether a particular defense is an affirmative defense). If the majority opinion's position were correct, in every case where the evidence supports an inference of discrimination, i.e., in every case where the plaintiff's evidence is sufficient to go to a jury, the

39

defendant's response, if any, would be an affirmative defense and the defendant would have the burden of persuasion. Obviously, that is not the law.

The majority opinion itself acknowledges there are at least some situations in which the same evidence that creates a prima facie case, and consequently raises an initial presumption of intentional discrimination, may also suffice to create an inference of intentional discrimination. One example is where the evidence presented to establish a prima facie case is also sufficient to show that the defendant's proffered legitimate, non-discriminatory reason is pretextual. That does happen. *See, e.g., Arrington v. Cobb County,* 139 F.3d 865, 875 n. 20 (11th Cir.1998); Majority Op. at 373 n. 12. Because a jury may infer intentional discrimination if the plaintiff establishes a prima facie case that also casts doubt on the employer's proffered non-discriminatory reason, *see Combs,* 106 F.3d at 1532, it follows that evidence establishing a prima facie case certainly will sometimes be enough to establish an inference of unlawful discrimination.

The majority opinion's insistence upon the presumption versus inference distinction serves no good purpose here, is needlessly complex, and is confusing. The distinction serves no good purpose because everyone agrees that the establishment of a prima facie case shifts only the burden of production and not the ultimate burden of persuasion to the defendant. There is no dispute about that. Everyone also agrees that in some cases the same evidence that establishes a prima facie case, without more, will also create a jury issue as to whether the defendant's proffered explanation is pretextual. There is no dispute about that. Those undisputed propositions need not be dressed up in more complex or different terms than we have used over and over in prior decisions. An about-face at this late date complicates matters. In law, as in other intellectual fields, we would do

40

well to keep in mind William of Occam's maxim that the simpler the better, that unnecessary complexities only create confusion. Law ought not be logomachy.