[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11030

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02786-CV-AR-M

JERRY SUMMERLIN,

Plaintiff-Appellant,

versus

M & H VALVE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 17, 2006)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Jerry Summerlin, an African-American male, appeals the district court's

grant of defendant M & H Valve Company's (M&H) motion for summary

judgment as to all of his claims. Summerlin's complaint alleged both racial failure-

to-promote discrimination and retaliation for filing a charge with the Equal Employment Opportunity Commission (EEOC), pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a), 3(a) and 42 U.S.C. § 1981 (Section 1981). Summerlin argues that the district court erred in granting M&H's motion for summary judgment because M&H's proffered reason for promoting another candidate over Summerlin is not legitimate and is a pretext for discrimination.

We review a district court's grant of summary judgment de novo. Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000). Because the same prima facie case and burden-shifting mechanisms apply to Title VII and Section 1981 discrimination claims, decisions construing Title VII are applicable to all of Summerlin's claims. See Cooper v. Southern Co., 390 F.3d 695, 724-25 (11th Cir. 2004).

## I.

Although M&H argues that Summerlin may not argue for the first time on appeal that the district court employed an incorrect prima facie standard, in our de novo review we will apply the appropriate prima facie standard, irrespective of what the parties argued in the district court. In order to establish a prima facie case of promotion discrimination, a plaintiff may show that: (1) the plaintiff is a member

2

of a protected minority; (2) he was qualified and applied for the promotion; and (3) he was rejected despite these qualifications. Walker v. Mortham, 158 F.3d 1177, 1185-87 (11th Cir. 1998). The parties, however, dispute the fourth element. M&H argues that a plaintiff must establish, as part of the prima facie case, that the person promoted was equally or less qualified than him. See Combs v. Plantation Patterns, 106 F.3d 1519, 1539 (11th Cir. 1997). Summerlin argues that he has to show merely that the employer attempted to fill or, in fact, filled the position with someone outside the protected class. See, e.g., Coutu v. Martin County Bd. of County Comm'rs., 47 F.3d 1068, 1073 (11th Cir. 1995).

In 1998, a panel of our Court specifically addressed this possible conflict. Walker v. Mortham, 158 F.3d at 1185-1187. In deciding which standard to follow, we adhered to the "earliest case" rule and concluded that the standard set out in Crawford v. Western Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980) would apply. Walker, 158 F.3d at 1189. In addition to the standard set out in Crawford being the controlling precedent, we found support in Supreme Court cases, including Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Walker, 158 F.3d at 1189. We concluded that "under Patterson, we may never require a plaintiff to establish that she is more qualified than the successful promotee, let alone impose that requirement at the prima facie stage." Id. at 1192.

3

Summerlin does not need to show that he was more qualified than the successful applicant as part of his prima facie case.

M&H does not dispute that Summerlin is a member of a protected class, that he was qualified and applied for the promotion, that he was rejected for the promotion, and that someone outside his protected class filled the position. Thus, Summerlin has established a prima facie case of failure-to-promote discrimination. Walker, 158 F.3d at 1185-87.

Once a prima facie case is established, the burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the employee's rejection. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d. 668 (1973). If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was a pretext for discrimination. Id. at 804, S.Ct. at 1825. M&H asserts Chuck Yeager's qualifications relative to those of Summerlin as its legitimate, nondiscriminatory reason for promoting Yeager instead of Summerlin.

The next step of analysis is to determine whether the employer's rationale for not promoting the plaintiff is a pretext for discrimination. We have held that "our precedent makes clear that where an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no

4

reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff. However, where the qualifications disparity is not the *sole* basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." Vessels v. Atlanta Independent School System, 408 F.3d 763, 772 (11th Cir. 2005) (emphasis in original, citations omitted). Our only concern is whether unlawful discriminatory animus motivates the challenged employment decision, not whether the employment decisions are prudent or fair. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).

M&H's decisionmakers considered the candidates' work experience, education levels, and union experience when filling the supervisor position. This supervisor would supervise the operation of all the machines in the Machine Shop, including the CNC (computerized numeric control) machines. Yeager had approximately ten years of experience working on CNC machines. In his previous job, he had worked for three years as a supervisor over CNC operators.[1] Summerlin, by contrast, had completed his CNC training course less than two

---

[1]Summerlin emphasizes that on Yeager's employment application to M&H, he stated that his earlier position was as a "leadman," not a supervisor. Moreover, in Yeager's deposition he characterized his position as "leadman, set up man." Yeager's resume, however, stated that he was a "supervisor" and his affidavit states the same. Regardless, even as a "leadman," Yeager's experience with CNC machines was much more extensive than Summerlin's.

months earlier. He was a CNC operator with no experience as either a leadman or supervisor. Summerlin's only supervisory experience was over the dietary department of a nursing home in 1992-93. Both employees had experience in unions, Summerlin at M&H and Yeager at his previous employer. Educationally, Summerlin had completed studies in electronics from the National Education Center. Yeager had taken classes in electronics at DeVry Institute but had not completed his studies. Even if Summerlin possibly had a slight edge in the final two criteria, it is outweighed by the significant disparity in relevant work experience. Moreover, in this Circuit the question is not who was a better applicant, but whether the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11 th Cir. 2001) (quoting Denney v. City of Albany, 247 F.3d 1172, 1187 (11 th Cir. 2001)). Summerlin's qualifications are not so much better than Yeager's as to "jump off the page." An employer could reasonably conclude that Yeager was more qualified to supervise CNC operators.

The district court properly granted summary judgment because Summerlin was unable to show that M&H's articulated reasons for not promoting him - that the other candidate had ten years of relevant work experience with the same type of machines to be supervised, and three years of supervisory experience over at least

6

ten other employees - were a pretext for discrimination.

## II.

On December 18, 2000, Summerlin refused to work on a piece of equipment because he believed it was unsafe. Yeager, his supervisor, disagreed and wrote him up for failure to follow instructions.[2] Yeager called in the write-up to the personnel office on the same day. On January 4, 2001, Chuck Yeager issued the formal reprimand to Summerlin for the incident. Summerlin alleges that this reprimand was in retaliation for an EEOC charge that he filed on December 28, 2000. To establish a prima facie case of retaliation forbidden by Title VII and its related statutes, Summerlin alleges that: (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

To be considered an adverse employment action for purposes of Title VII's anti-retaliation provision, the action must either be an ultimate employment

---

[2] At times, Summerlin seems to argue that he was on vacation on December 18. However, in his deposition, he describes the incident that was the subject of the reprimand. Summerlin clearly acknowledges the confrontation that occurred in December 2000. The date confusion seems to stem from the fact that Summerlin's third shift spans two dates.

decision or else must meet some threshold level of substantiality. Stavropoulos v.

Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004). Ultimate employment decisions

include decisions such as termination, failure to hire, or demotion. Id. at 617. An

employment action crossing the threshold of substantiality would have to have an

impact on an important condition of employment, such as salary, title, position, or

job duties. Id. at 620. The reprimand of an employee does not constitute an

adverse employment action when the employee suffers no tangible harm as a result.

Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001); Lucas v.

W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative

performance evaluations, standing alone, do not constitute adverse employment

action sufficient to satisfy the second element of a prima facie case of retaliation

under the ADA.")

Summerlin does not allege that the written discipline affected any important

condition of his employment, such as salary, benefits, title, or job duties. Rather, he

insists that the reprimand was an adverse employment action because M&H cited

the written discipline as evidence of Summerlin's poor work when the EEOC

investigated Summerlin's claims. However, the EEOC's consideration of the

discipline did not tangibly harm Summerlin. The EEOC still found reasonable

cause for Summerlin's failure to promote claim. Although the EEOC did not find

reasonable cause for his retaliation claim, that finding cannot be attributed to the allegedly retaliatory reprimand in his file. Rather, the reprimand itself was the subject of the EEOC's inquiry. The EEOC was investigating precisely the issue of whether the reprimand was issued fairly or in retaliation for Summerlin's EEOC charge. Thus, the presence of the reprimand in Summerlin's file could not adversely affect the EEOC's determination of whether that reprimand was retaliatory. The written reprimand had no adverse effect on Summerlin's employment.

Even assuming, *arguendo*, that the reprimand was an adverse employment action, Summerlin cannot prove that there was a causal connection between his protected activity and the reprimand. To establish the causal connection required by the third prong, the plaintiff must show that: (a) the decision-makers were aware of the protected conduct; and (b) the protected activity and the adverse employment action were not wholly unrelated. Gupta, 212 F.3d at 590. However, temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct. Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000).

Yeager made the decision to write up Summerlin on December 18, 2000,

9

even though the formal write-up did not issue to Summerlin until January 4, 2001. Summerlin did not file his EEOC complaint until December 28, 2000. He told no one of his complaint. The EEOC mailed its notification of the charge to M&H on January 3, 2001. It is undisputed that Yeager did not know of the EEOC charge when he issued the written discipline to Summerlin on January 4, 2001. Most importantly, no one at M&H knew of the EEOC charge back on December 18, 2000, when Yeager actually made the decision to discipline Summerlin.

The district court properly granted summary judgment as to Summerlin's retaliation claim because Summerlin was unable to show that the written disciplinary memorandum constituted an adverse employment action or that a causal connection existed between his filing a charge of discrimination with the EEOC and his written discipline.

Upon review of the record and upon consideration of the parties' briefs, we find no reversible error. For the reasons stated above, we affirm the district court's grant of M&H's motion for summary judgment dismissing Summerlin's claims of failure-to-promote discrimination and retaliation in violation of Title VII and Section 1981.

**AFFIRMED.**[3]

---

[3] Summerlin's request for oral argument is denied.