**Kurtis BEACH, Plaintiff,**

v.

**JPMORGAN CHASE BANK, N.A., Defendant.**

Case Number: 15–22633–CIV–MARTINEZ–GOODMAN

United States District Court, S.D. Florida, Miami Division.

Signed 10/26/2016

Teri Guttman Valdes, Teri Guttman Valdes, LLC, Coral Gables, FL, for Plaintiff.

Richard Neal Margulies, Sean Patrick Walsh, Jackson Lewis LLP, Jacksonville, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE

Plaintiff Kurtis Beach ("Beach") filed a three-count complaint against his former employer, Defendant JPMorgan Chase Bank, N.A.[1] ("Chase"), alleging national origin discrimination (Count I) in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"),

as well as retaliation claims (Counts II, III) in violation of the same. Chase now moves for summary judgment on all three of Beach's claims. [ECF No. 25]. For the reasons set forth below, Chase's motion for summary judgment is granted.

### I. Facts[2]

Defendant Chase operates a financial services business. [ECF No. 1 at ¶ 2; ECF No. 6 at ¶ 2]. Plaintiff Beach, who is of "American, non-Hispanic National Origin," was employed by Chase in its Miami offices from July 5, 2011 to August 5, 2014— initially as a Branch Manager Trainee ("BMT"), subsequently as a Chase at Work ("CAW") Account Representative, and finally as an Assistant Branch Manager ("ABM"). [ECF No. 1 at ¶ 1; ECF No. 26 at 2, ¶¶ 6, 20; ECF No. 34 at ¶¶ 3,11].

Beach was hired as a BMT after he interviewed with several Chase managers, including George Acevedo. [ECF No. 26 at ¶ 1; ECF No. 34 at ¶ 13]. As a BMT, Beach received training as part of Chase's BMT program in order to obtain a Branch Manager ("BM") position. [ECF No. 26 at ¶ 2; ECF No. 34 at ¶ 13]. Beach asserts that Chase does not have a formal application process for hiring BMs,[3] but recognizes that he could have applied for a BM position at two types of Chase branches: (1) traditional—an already established branch; or (2) new build—a branch that is not yet established. [ECF No. 34 at ¶¶ 1, 20–21; ECF No. 26 at ¶ 4]. Beach expressed interest only in new build branch-

---

**1.** Although Plaintiff listed Defendant as "J.P. Morgan Chase & Co." in his complaint, Defendant maintains that "JPMorgan Chase Bank, N.A." is the proper party to this action [ECF No. 25 at 2], and Plaintiff does not dispute this assertion.

**2.** The following facts are undisputed, unless otherwise noted. In such an event, the Court resolves all reasonable inferences in favor of Beach, the non-moving party. *See Morton v.*

*Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).

**3.** Chase argues that BMTs are not promised a BM position and must apply for a specific BM opening; thereafter, the qualified applicants are interviewed and reviewed against the job posting requirements. Furthermore, Chase maintains that if no BM positions are open, the BMT continues to rotate between the branches. [ECF No. 26 at ¶ 2].

es located at 69th and Collins ("Collins Branch"), 41st Street in Miami Beach ("41st Street Branch"), and Biscayne Boulevard ("Biscayne Branch"). [ECF No. 26 at ¶ 4]. Acevedo told Beach that he would be the BM at the Collins Branch; however, construction of that branch was delayed. [ECF No. 34 at ¶ 2].

Upon his former supervisor, Fernando Ruiz, and Acevedo's advice to apply for a CAW position, Beach applied for and accepted a CAW Account Representative position in April of 2012. [ECF No. 26 at ¶ 6; ECF No. 34 at ¶ 3]. Up until Beach filed his complaint and charge in June of 2013, he considered Acevedo and Ruiz to be his strongest supporters and advocates. [ECF No. 26 at ¶ 3].

Shortly after he started working at CAW, Beach began complaining about his supervisor, Lisa Pollard, whom he believes was not giving him any support because she was always too busy or at home with her newborn. [ECF No. 26 at ¶ 7; ECF No. 34 at ¶ 4]. In late August, Beach emailed Acevedo and Ruiz to complain about CAW and Pollard. [ECF No. 26 at ¶ 8; ECF No. 34 at ¶ 5]. On September 30, 2012, Beach sent Pollard's supervisor, Travis Reiger, an email complaint in which he called Pollard a "liar" at least eight times, knowing that sending that email would affect the possibility of future promotions and incentives. [ECF No. 26 at ¶ 9; ECF No. 34 at ¶ 6]. On October 26, 2012, Beach received a verbal reprimand from Pollard for lack of production, as well as lack of professionalism and subordination, but Beach maintains that he was not given the tools necessary to succeed. [ECF No. 26 at ¶ 10; ECF No. 34 at ¶ 7]. In late December 2012, Beach received a "Needs Improvement" performance review, which was later modified to "Low Meets Expectation." [ECF No. 26 at ¶ 12; ECF No. 34 at ¶ 8]. Notwithstanding, Beach testified

that he was not discriminated against during his employment at CAW. [ECF No. 26 at ¶ 14].

In January 2013, Beach learned of an opening for a Relationship Manager ("RM") position in Miami Shores, but did not pursue it because he did not think it was a good fit for him. [ECF No. 26 at ¶ 16; ECF No. 34 at ¶ 9]. Beach believed two Hispanics were selected for RM positions that he thought were a good fit for him; however, he admitted that he knew nothing about their national origin, qualifications, which branch they worked in, or when these positions were available. [ECF No. 26 at ¶ 17]. On January 26, 2013, Beach emailed Durand and Ruiz to convince Durand that he should be selected for the Collins Branch BM position. [ECF No. 26 at ¶ 19]. In that email, Beach admitted that his weaknesses were in managing operations and administrative tasks, but explained that he would hire an ABM for those tasks. [ECF No. 26 at ¶ 19].

In February 2013, Ruiz informed Beach of an ABM of Sales position, and Beach accepted the position and transferred out of CAW in April 2013. [ECF No. 26 at ¶ 21; ECF No. 34 at ¶ 11]. Beach later spoke with Durand regarding the Collins Branch BM position, and Durand informed him that Chase's hiring practice had changed and only experienced Chase BMs could be hired as a BM at new build locations, and the Collins Branch position was not filled until after this change came into effect. [ECF No. 26 at ¶ 22; ECF No. 34 at ¶ 11]. In April of 2013, Beach applied for the posted BM positions at the Collins and 41st Street Branches. [ECF No. 26 at ¶ 24]. Beach believes that Ruiz and Durand made discriminatory hiring decisions when they hired Roy Hallack, a Hispanic male with less banking experience than him, as well as other BMs who have less experience than him.[4] [ECF No. 34 at ¶ 14].

---

4. To the contrary, Chase maintains that the

BMs it hired for the Collins and 41st Street

Beach filed an internal complaint on June 7, 2013, and a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 17, 2013. [ECF No. 26 at ¶ 25]. On August 14, 2013, Beach applied for and was granted short-term disability leave. [ECF No. 26 at ¶ 27]. Prudential Insurance Company ("Prudential") is Chase's claims administrator for its Long–Term Disability Plan. [ECF No. 26 at ¶ 28]. Prudential denied Beach long-term disability (LTD) coverage on May 20, 2014, but Beach did not receive Prudential's denial letter until April 1, 2015. [ECF No. 34–1 at 1–N; ECF No. 26 at ¶ 30–31; ECF No. 34 at ¶ 18].

On July 22, 2014, Chase, through a Human Resources representive, sent Beach a letter regarding his intent to return to work. [ECF No. 26 at ¶ 31; ECF No. 34 at ¶ 19; ECF No. 34–1 at 84]. The letter noted Beach's failure to be reached by telephone, and advised Beach that it was put on notice that he was not on long-term disability leave. As such, the letter instructed Beach to contact Human Resources immediately if he would "like to request additional leave or a reasonable accommodation under JPMorgan Chase's Accommodating Disabilities Policy." Finally, the letter stated that if Human Resources did not hear from Beach by August 5, 2014, it would "assume that [he] did not intend to return to work and [it would] process the termination of [his] employment effective 8/5/14." In response to the letter, Beach informed Human Resources that there was a discrepancy in his LTD benefits, and that he was not medically cleared to return to work. [Id.]. However, Beach did not submit a doctor's letter in support of his LTD benefits claim, did not request additional leave or a reasonable accommodation under JPMorgan Chase's Accommodating Disabilities Policy, and was thereafter terminated on August 5, 2014. [ECF No. 26 at ¶ 31; ECF No. 34 at ¶ 19].

In the instant action, Beach maintains that he was discriminated and retaliated against by Chase when he: (1) was not placed in a BM position,[5] (2) was advised to apply for the CAW position, (3) was disciplined by his then-supervisor, Fernando Rico, for not wearing appropriate shoes, and (4) was ultimately terminated. [ECF No. 34 at ¶ 15].

## II. Motion for Summary Judgment

Chase moves for summary judgment based on Beach's failure to establish *prima facie* claims of national origin discrimination and retaliation. As to Beach's claim for national origin discrimination, Chase argues that Beach fails to show: (1) that he was qualified for a promotion to BM or RM; (2) that the two BM positions he applied to were filled with less qualified individuals; and (3) that any BM or RM position was filled with equally or less qualified employees who were not of Beach's national origin. [ECF No. 25 at 10–11]. Chase further argues that even if Beach could establish a *prima facie* claim of national origin discrimination, he cannot show that Chase's legitimate business reason for not promoting him was pretextual. [ECF No. 25 at 13]. As to Beach's retaliation claims, Chase argues that Beach fails to establish any adverse employment action in support of this claim, a causal con-

---

Branches—Roy Hallack and Orit Danino–Lindo, respectively, were experienced Chase BMs with the required qualifications. [ECF No. 26 at ¶ 24].

**5.** Chase asserts that it did not promote Beach to a BM position because he expressly limited his interest to three new build locations, only applied to two positions in 2013, and in any event, lacked the required one year of Chase BM experience mandated by Chase's commitment to federal regulators. [ECF No. 25 at 10].

nection between his internal complaints and any supposed retaliation, and that any such adverse action was pretextual. [ECF No. 25 at 13].

Beach responds that he has presented sufficient evidence contradicting Chase's contention that a formal BM application and selection process exists, and argues that by virtue of being hired and trained as a BMT, he was a qualified candidate. [ECF No. 34 at 8–9]. Beach additionally asserts that because Chase does not have a formal application process, it cannot objectively state why it selected one employee over another. [ECF No. 34 at 11]. Moreover, Beach argues that because Chase's required qualifications are unknown, it is difficult for Beach to demonstrate that he was qualified for the positions, or that Chase's proffered business reason was pretextual. [ECF No. 34 at 12]. Beach also argues that he was retaliated against because when he objected to not being elevated to BM, he was not placed in other positions, but rather, told to apply for the CAW position and disciplined. [ECF No. 34 at 13]. Beach further argues that he was retaliated against when Chase improperly processed his claim for disability leave and subsequently terminated him. [ECF No. 34 at 13]. Chase replies, reasserting the grounds set forth in its motion.

## III. Discussion
### a. Standard

Summary judgment is appropriate only when the moving party demonstrates the absence of a genuine issue of material fact, such that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant must show that the plaintiff has put forth no evidence in support of an essential element of his case, or present affirmative evidence that plaintiff will be unable to prove one or more essen-

tial elements of the case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party is able to successfully meet this initial burden, the burden then shifts to the plaintiff to provide evidence showing that a genuine issue of material fact exists for trial. *Id.* at 330, 106 S.Ct. 2548. Notably, however, unsupported speculation does not create a genuine issue of material fact. *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

██ In ruling on a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences from that evidence in the light most favorable to the non-moving party. *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Any conflicts between the facts should be resolved in favor of the non-moving party, unless "the account 'is inherently incredible and could not support reasonable inferences sufficient to create an issue of fact.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (quoting *Riley v. City of Montgomery*, 104 F.3d 1247, 1251 (11th Cir. 1997)).

### b. National Origin Discrimination— Count I

██ Title VII prohibits employment discrimination based on an individual's national origin. 42 U.S.C. § 2000e–2(a). To establish a *prima facie* case of discrimination where a plaintiff alleges that an employer failed to promote him on an unlawful basis, a plaintiff must show that: (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) the employer continued to seek applicants for the position or promoted another employee who was not a member of the protected class. *Walker v. Mortham*, 158 F.3d 1177, 1191–92 (11th Cir. 1998).

If a plaintiff establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 1184. So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production, the inference of discrimination drops out of the case entirely, and the plaintiff must show, by a preponderance of the evidence, that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Beach has not established a *prima facie* case of discrimination. First, Beach cannot prevail on a discrimination claim based on the failure to promote him to a RM position because he has not shown that he applied for the promotion. *Walker,* 158 F.3d at 1192. The record reflects that the only available RM position that Beach knew about was the opportunity at Miami Shores, which he did not pursue after realizing it was not a good fit. Other than that one position, Beach has not pointed to any other specific RM positions that were available to him, and for which he could have applied or been considered for. Instead, Beach speculates that two Hispanics were selected for RM positions that were a good fit for him—all the while conceding that he has no actual knowledge of whether the selected RMs were Hispanic or not, their qualifications, at which branch(es) they work, and when those positions became available. As such, Beach's unsupported speculation does not create a genuine issue of material fact. *See Cordoba,* 419 F.3d at 1181.

■ Second, Beach cannot prevail on a discrimination claim based on Chase's failure to promote him to a BM position because he has not shown that he was qualified for the BM positions for which he applied or wished to be considered. *Walker,* 158 F.3d at 1192. In Beach's email to Durand explaining why he should be selected as BM for the Collins Branch, Beach admitted that he was weak in managing operations and administrative tasks. Beach argues that his employment and training as a BMT makes him automatically qualified for any BM position; however, Beach expressly narrowed his interest to three new build branches: the Collins Branch, the 41st Street Branch, and the Biscayne Branch—thereby limiting his own chances of employment as a BM. Moreover, Beach has not shown that the 41st Street and Biscayne Branches were filled with individuals outside of the protected class. To the contrary, evidence indicates that the individuals selected for these positions were non-Hispanic, the same national origin as Beach. As to the Collins Branch BM position, Beach speculates that Roy Hallack was hired because he is of Hispanic origin, but offers no evidence in support of this claim. Again, Beach cannot create a genuine issue of material fact based on unsupported speculation. *See Cordoba,* 419 F.3d at 1181.

■ However, even assuming that Beach established his *prima facie* case, he has not shown by a preponderance of evidence that Chase's proffered reasons for its failure to promote him were pretextual. *See St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742. Chase specifically articulated the following non-discriminatory reasons why Beach was not promoted to a BM position: (1) Beach limited his BM opportunities to three new build branches; (2) Beach received a verbal warning and a "Low Meets Expectations" performance review while at CAW; and (3) Chase entered into a commitment with federal regulators in 2013 to restrict its staffing of new build BM openings to employees who

have at least one year of experience as a Chase BM.

■ Beach cannot show that Chase's decisions were motivated by a discriminatory animus because two of the three BM positions he desired were filled with employees who were of the same national origin as him, and all successful candidates had the required one year of Chase BM experience, which Beach did not have. *See Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (holding that the Court is "not in the business of adjudging whether employment decisions are prudent or fair," but rather, "[its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."). Other than noting the difficulty of demonstrating that Chase's business reasons were pretextual, Beach has provided no evidence that Chase's proffered reasons were a cover-up for a discriminatory decision. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). Therefore, Beach has not casted sufficient doubt to allow a reasonable factfinder to determine that Chase's legitimate reasons were not what actually motivated its conduct. *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001). Accordingly, Chase is entitled to summary judgment with respect to Beach's national origin discrimination claim.

### c. Retaliation Claims— Counts II and III

■ Title VII also prohibits retaliation against an employee who has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529

F.3d 961, 970 (11th Cir. 2008). An adverse employment action may be in the form of an ultimate employment decision or a serious and material change in the terms, conditions, or privileges of employment. *Id.* at 970–71. Additionally, the Supreme Court has instructed that Title VII retaliation claims "require proof that '[the] protected activity was a but–for cause of the alleged adverse action by the employer.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ––– U.S. –––, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013)).

As with discrimination claims, "Title VII retaliation claims require that '[o]nce the plaintiff establishes [a] *prima facie* case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.'" *Crawford*, 529 F.3d at 976 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

■ In Count II, Beach claims that the protected activity he engaged in was objecting to Chase's failure to promote him to a BM position, along with his fellow BMTs. He states that in retaliation of his objection, Chase failed to promote him to other BM positions, advised him to apply for the CAW position, and disciplined him for wearing inappropriate shoes. Even assuming Beach established a *prima facie* case of retaliation based on Chase's failure to promote him to other BM positions, Beach nonetheless fails to rebut Chase's proffered legitimate business reasons for reasons previously stated, *see supra* § III(c), and therefore fails to establish that such reasons were pretext for retaliation. *Crawford*, 529 F.3d at 976. Moreover,

Beach has not demonstrated how a former supervisor's advice to apply for a CAW position or a reprimand for not wearing appropriate shoes can be construed as adverse employment actions for purposes of a Title VII retaliation claim. Beach offered no explanation as to how he suffered "a *serious and material* change in the terms, conditions, or privileges of employment," as a result of these purported "adverse employment actions." *Id.* at 970–71 (internal quotations omitted).

In Count III, Beach claims that as a result of his internal complaint and Charge of Discrimination, Chase retaliated against him by failing to properly process his long-term disability claims and, ultimately, terminating him. However, Beach cannot establish a causal connection between the complaints he filed in June of 2013 and his difficulty obtaining LTD benefits, because he applied for LTD benefits in February 2014. The eight month disparity between these two events does not support a causal connection. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that "a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to establish temporal proximity). Moreover, Beach's LTD claims were processed, not by Chase, but by a third-party—Prudential Insurance Company, further eroding any causal link.

Additionally, Beach cannot establish a causal connection between his 2013 complaints and his subsequent termination, which occurred almost a year later on August 5, 2014, because of the substantial delay between the two events. *See id.* Furthermore, record evidence shows that after Prudential denied Beach's LTD claim and prior to his termination, Chase asked Beach of his intentions of returning to work, offered him the opportunity to request additional leave or special accommodations, and cautioned him about his potential termination. Beach neither requested additional leave or special accommodations, and therefore cannot show that his complaints were a but-for cause of his termination. *See Trask,* 822 F.3d at 1194. As such, Beach has failed to present evidence from which a reasonable jury could find a causal connection between his complaints of national origin discrimination in June of 2013, and his problems obtaining LTD benefits in February 2014, as well as his termination in August 2014. Accordingly, Chase is entitled to summary judgment in its favor with respect to all claims.

For these reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment [ECF No. 25] is **GRANTED.**

2. The Clerk is directed to **DENY ALL PENDING MOTIONS AS MOOT,** and **CLOSE** this case. A final judgment shall be entered by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 day of October, 2016.