[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11604

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LORENZO GAROD PIERRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20321-JEM-1

_____

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before NEWSOM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

We previously affirmed Lorenzo Pierre's conviction for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), rejecting his argument that § 922(g)(1) was unconstitutional as applied to his case in light of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *United States v. Pierre*, No. 23-11604, 2024 WL 1070655 ("*Pierre I*"), at *1 (11th Cir.) (unpublished), *vacated*, ___U.S.___, 2024 WL 4529801 ("*Pierre II*"), at *1 (Oct. 21, 2024) (mem.). In doing so, we concluded that Pierre's argument was foreclosed by *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024), which held that our prior precedent in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) (upholding the constitutionality of § 922(g)(1) in all circumstances) "remain[ed] good law." *Pierre I*, 2024 WL 1070655, at *1.

In October 2024, the Supreme Court granted Pierre's petition for a writ of *certiorari*, vacated our judgment, and remanded the case for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). *Pierre II*, ___U.S. ___, 2024 WL 4529801, at *1. Upon careful review, we reach the same conclusion and, again, affirm Pierre's conviction. To explain why, we briefly detail our rulings in *Rozier* and *Dubois* and the Supreme Court's rulings in *Bruen* and *Rahimi*.

23-11604                 Opinion of the Court                 3

In *Rozier*, a defendant challenged his conviction under § 922(g)(1) as unconstitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2008). 598 F.3d at 770-71. We rejected Rozier's challenge, however. *Id.* at 771. We explained that the "language [of *Heller*] suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* (citing *Heller*, 554 U.S. at 626-27). We noted:

> [S]tatutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class. Therefore, the fact that Rozier may have possessed the handgun for purposes of self-defense (in his home), is irrelevant.

*Id.*[1]

---

[1] Both before and after *Bruen*, we have applied *Rozier* to reject Second Amendment challenges and, in doing so, have interpreted it as foreclosing as-applied challenges to the constitutionality of § 922(g)(1), albeit often in unpublished decisions. *See, e.g.*, *United States v. Cropper*, 812 F. App'x 927, 931 (11th Cir. 2020) (unpublished) ("As Cropper acknowledges, we have held that statutes prohibiting felons from possessing firearms do not violate the Second Amendment." (citing *Rozier*, 598 F.3d at 770)) (before *Bruen*); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022) (citing *Rozier* for the proposition that "certain groups of people . . . may be 'disqualified from' possessing arms without violating the Second Amendment" (quoting *Heller*, 554 U.S. at 635)) (before *Bruen*); *United States v. Diaz*, No. 21-11625, 2023 WL 8446458, at *2 (11th Cir. 2023) (unpublished) ("Statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second

In *Bruen*, the Supreme Court addressed a challenge to New York's gun-licensing regime. 597 U.S. at 10-12. New York's statutory scheme prohibited citizens from obtaining a license to carry firearms outside their home unless they proved "a special need for self-defense." *Id.* at 11. "The [Supreme] Court ruled [New York's statutory] scheme unconstitutional because 'the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.'" *Dubois*, 94 F.4th at 1292 (quoting *Bruen*, 597 U.S. at 10). *Bruen* also rejected the second step of "a two-step test that then prevailed in most circuits" for analyzing Second Amendment challenges. *Id.* (citing *Bruen*, 597 U.S. at 15-25).[2] Instead, the Supreme Court explained, the proper standard for assessing whether a challenged firearm regulation is:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that

Amendment." (quoting *Rozier*, 598 F.3d at 771) (alteration adopted)) (after *Bruen*); *United States v. Hyde*, No. 22-10332, 2024 WL 726909, at *3 (11th Cir. 2024) (unpublished) ("Our conclusion in *Rozier* that § 922(g)(1) is a constitutional restriction on a defendant's Second Amendment rights is still binding precedent, and we are bound to follow that panel's decision." (citing *Rozier*, 598 F.3d at 772)) (after *Bruen*).

[2] We had "never actually applied the second, means-end-scrutiny step" of this now-overruled two-step test. *See Dubois*, 94 F.4th at 1292 (citing *Jimenez-Shilon*, 34 F.4th at 1052-53 (Newsom, J., concurring)).

the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

After *Bruen*, we rejected a defendant's facial and as-applied challenges to the constitutionality of § 922(g)(1) in *Dubois*, a case where the defendant argued that *Bruen* had abrogated *Rozier*. 94 F.4th at 1291-93. After summarizing *Heller*, *Bruen*, and *Rozier*, we explained that the Supreme Court's opinion in *Bruen* "left no doubt that it viewed its decision as a faithful application of *Heller*, not a departure from it." *Id.* at 1292. We also noted that "*Bruen*, like *Heller*, [had] repeatedly described the [Second Amendment] right as extending only to 'law-abiding, responsible citizens.'" *Id.* (quoting *Bruen*, 597 U.S. at 26). We then explained:

> *Bruen* did not abrogate *Rozier*. Because the Supreme Court made it clear in *Heller* that its holding did not cast doubt on felon-in-possession prohibitions, and because the Court made it clear in *Bruen* that its holding was in keeping with *Heller*, *Bruen* could not have clearly abrogated [*Rozier*]. Indeed, the *Bruen* majority did not mention felons or section 922(g)(1). Dubois argues that we may depart from *Rozier* because *Bruen* abrogated all prior precedent relying on the two-step analysis. But *Rozier* upheld section 922(g)(1) on the threshold ground that felons are categorically disqualified from exercising their Second Amendment right under *Heller*. We interpreted *Heller* as limiting the right to law-abiding and qualified individuals and as

clearly excluding felons from those categories by re-
ferring to felon-in-possession bans as presumptively
lawful.  And far from demolishing or eviscerating
*Rozier*'s reliance on *Heller*, *Bruen* repeatedly stated that
its decision was faithful to *Heller*.  We require clearer
instruction from the Supreme Court before we may
reconsider the constitutionality of section 922(g)(1).
Because *Rozier* binds us, Dubois's challenge based on
the Second Amendment necessarily fails.

*Id*. at 1293 (alterations adopted, internal citations and quotation
marks omitted).[3]

In *Rahimi*, decided after *Dubois* and Pierre's initial appeal, the
Supreme Court held that § 922(g)(8)—which prohibits firearm pos-
session by individuals subject to a domestic violence restraining or-
der—was constitutional because the provision comported with the
principles underlying the Second Amendment.  602 U.S. at 692-700.
In reaching that conclusion, the Supreme Court explained that
"some courts [had] misunderstood the methodology" of its "recent
Second Amendment cases."  *Id*. at 691.  It clarified that *Bruen* does
not require a regulation to have existed at the founding in an iden-
tical form: instead, "[t]he law must comport with the principles un-
derlying the Second Amendment, but it need not be a 'dead ringer'
or a 'historical twin.'"  *Id*. at 692 (quoting *Bruen*, 597 U.S. at 30).

---

[3]As noted above, shortly after we decided *Dubois*, we decided Pierre's initial
appeal, concluding that his as-applied challenge to the constitutionality of
§ 922(g)(1) was foreclosed because we had recently determined, in *Dubois*, that
*Rozier* was still binding precedent.  *Pierre I*, 2024 WL 1070655, at *1.

The Supreme Court also reiterated that prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626-27). It added that, in *Heller*, it had "recognized that the right [secured by the Second Amendment] was never thought to sweep indiscriminately." *Id.* at 691. Additionally, it held that § 922(g)(8) was constitutional as applied to Rahimi because the restraining order to which he was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 693-701. The Court added that the restriction imposed on Rahimi's rights by § 922(g)(8) was temporary because it applied only while he was subject to a restraining order. *Id.* at 699.

Under the prior panel precedent rule, we are bound to follow prior binding precedent until it is overruled by the Supreme Court or this Court sitting *en banc*. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016); *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018). "To constitute an 'overruling' for the purposes of this prior panel precedent rule, the Supreme Court decision 'must be clearly on point.'" *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)). "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* Thus, "[t]o abrogate

a prior-panel precedent, 'the later Supreme Court decision must demolish and eviscerate each of its fundamental props.'" *Dubois*, 94 F.4th at 1293 (quoting *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 486). "So, for example, if our precedent relied on 'a line of Supreme Court precedents that the [Supreme] Court itself emphasizes in a later decision is not implicated by that later decision,' the Supreme Court's intervening decision 'cannot have' abrogated our precedent." *Id.* (alteration in original) (quoting *Del Castillo*, 26 F.4th at 1223). Of course, however, the Supreme Court does not have to directly cite our precedent to abrogate it. *See id.*; *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024), *pet. for rehearing pending*, (No. 19-15077).

With these principles in mind, we conclude that *Rahimi*, like *Bruen*, did not overrule or abrogate our decision in *Rozier*.[4] As we

---

[4] We recognize that other circuits have reached different results on whether challenges to § 922(g)(1) are foreclosed because of pre-*Bruen* caselaw. *See, e.g.*, *United States v. Diaz*, 116 F.4th 458, 465 (5th Cir. 2024) ("*Bruen* constitutes . . . a change [in law that] render[s] our prior precedent obsolete." (internal citation and quotation omitted)); *Range v. Att'y Gen*, 69 F.4th 96, 106 (3d Cir. 2023) (*en banc*) ("[T]he Government's contention that *Bruen* does not meaningfully affect this Court's precedent, is mistaken . . . ." (internal citation and quotation omitted)), *vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024) (mem.). Ultimately, however, it is the binding precedent of this Court and the Supreme Court which binds us, not the precedent of other circuits. Here, we held in *Rozier* that § 922(g)(1) is constitutional in all applications and the Supreme Court has not abrogated that precedent so we must apply it. *See Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) ("[A] decision of a prior panel *cannot be overturned by a later panel*." (emphasis added)).

explained in *Dubois*, *Rozier* did not rely on the "two-step" Second Amendment analysis which other circuits used at that time. *Dubois*, 94 F.4th at 1292. Thus, the reasoning in *Dubois*, in this respect, was not affected by *Bruen*'s overturning of this two-step procedure. *See id.* *Rahimi*, which *upheld* a challenged gun regulation as consistent with *Bruen*'s text-and-history test for Second Amendment regulations (or step-one under the previous two-step test) also did not "demolish and eviscerate each of [*Rozier*'s] fundamental props"; instead, it reinforces our conclusion that cases decided on "step one" remain binding. *Dubois*, 94 F.4th at 1293. That is because *Rahimi* essentially performed the same analysis as we did in *Rozier* by analyzing whether the challenged regulation was "consistent with the principles that underpin our regulatory tradition" and "'relevantly similar' to laws that our tradition is understood to permit . . . .'" *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29). In *Rahimi*, the result of that inquiry led the Supreme Court to conclude that certain historical laws—namely "surety and going armed laws"—established a "common sense" conclusion that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed" consistent with the Second Amendment. *Id.* at 698. In *Rozier*, we concluded that *Heller*'s statement that "'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons'" showed that "statutes disqualifying felons from possessing a firearm under any and all circumstances" were likewise consistent with tradition and constitutional under the Second Amendment. 598 F.3d at 771 (quoting *Heller*, 554 U.S. at 626).

*Rahimi*—like *Bruen*—also reiterated this same point from *Heller* and stated that prohibitions on felons' possession of firearms are "presumptively lawful." 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 627 n.26). Accordingly, *Rozier* binds us because neither *Bruen* nor *Rahimi* can fairly be read to reject, abrogate, or even call into question the portion of *Heller* which we relied on in *Rozier*. *Compare Heller*, 554 U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ."), *with Rahimi*, 602 U.S. at 699 (similar); *and Bruen*, 597 U.S. at 30 (noting *Heller*'s "discussion of 'longstanding laws'" for which the Supreme Court was "aware of no dispute[] regarding . . . lawfulness" under the Second Amendment); *see also Rozier*, 598 F.3d at 770-71 (citing *Heller*, 554 U.S. at 626-27).[5]

We reiterate what we said in *Dubois*: "[w]e require clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)." *Dubois*, 94 F.4th at 1293. Because neither *Bruen* nor *Rahimi* overruled, or abrogated to the point of overruling, our caselaw that forecloses Pierre relief, we affirm.

**AFFIRMED.**

---

[5] Affirmance here also prevents us from reading a decision of the Supreme Court (*Rahimi*) that upheld one part of a statute, § 922(g)(8), as *constitutional*, to render another portion of the same statute, § 922(g)(1), to be *unconstitutional*.